1   ERIC GOLDBERG (157544)
    eric.goldberg@dlapiper.com
2   TROY ZANDER (167823)
    troy.zander@dlapiper.com
3   **DLA PIPER LLP (US)**
    2000 AVENUE OF THE STARS SUITE 400
4   NORTH TOWER
    LOS ANGELES, CA 90067-4704
5   TELEPHONE:  310.595.3000
    FACSIMILE:  310.595.3300
6   COUNSEL TO OXFORD FINANCE, LLC
    AND SILICON VALLEY BANK
7

8                  UNITED STATES BANKRUPTCY COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10
    In re                                    Lead Case No.  16-05968-LT11
11
    SOTERA WIRELESS, INC.,                   Chapter 11
12
                Debtor.                      (Joint Administration Requested)
13
    SOTERA WIRELESS, INC.,                   **LIMITED OBJECTION OF
14                                           OXFORD FINANCE, LLC AND
            CASE NO. 16-05968-11             SILICON VALLEY BANK TO THE
15                                           DEBTORS' MOTION FOR ENTRY
    SOTERA RESEARCH, INC.,                   OF INTERIM AND FINAL ORDERS
16                                           AUTHORIZING USE OF CASH
            CASE NO. 16-05968-11             COLLATERAL**
17
                                             **HEARING**
18
                                             Date:   October 4, 2016
19                                           Time:   3:00 p.m.
                                             Place:  Dept. 3, Room 129
20

21          Secured   Creditors   Oxford   Finance,   LLC   and   Silicon   Valley   Bank

22   (collectively, the "Lenders") file this Limited Objection to the *First Day Motion for*

23   *Entry of Interim and Final Orders Authorizing Use of Cash Collateral Pursuant to*

24   *11 U.S.C. § 363 and Setting Final Hearing* (the "Cash Collateral Motion") [D.E. 7]

25   filed by the debtors in possession in this case (collectively, the "Debtors").

26          The Lenders support the Debtors' efforts to sell or refinance their business.

27   However, the Lenders object to the Debtors' proposed use of cash collateral

28   because it does not provide the Lenders with the adequate protection to which they

are entitled under the Bankruptcy Code. Accordingly, the Lenders hereby request adequate protection of their interests, as provided for in Bankruptcy Code section 363(e). The Lenders respectfully submit that, rather than grant the Cash Collateral Motion in its current form, the Court instead should condition the Debtors' use of the Lenders' cash collateral pursuant to the terms set forth below.

## I.
## Background

On September 12, 2014, the Debtors entered into a loan agreement with the Lenders (the "Prepetition Loan"). Cash Collateral Motion at p. 1. To secure their obligations to the Lenders under the Prepetition Loan, the Debtors granted to the Lenders security interests in, and liens on, certain of the Debtors' assets, including those assets of the Debtors that constitute cash collateral as defined in Bankruptcy Code section 363(a) (the "Cash Collateral"). However, with respect to the Debtors' intellectual property ("IP"), which apparently comprises a substantial amount of the Debtors' value, the Debtors' position is that the Lenders' collateral package includes the proceeds of the IP, but not the IP itself. *Id.* at 2; *see also,* Watlington Declaration [D.E. 11] at p. 6.

The Debtors assert that as of September 30, 2016 (the "Petition Date"), they were indebted to the Lenders in the amount of approximately $13.1 million.[1] Cash Collateral Motion at p. 2. However, as of the Petition Date, the Debtors possessed only approximately $2.4 million in cash. All of this cash comprises Cash Collateral of the Lenders. *Id.*

In support of the Cash Collateral Motion, the Debtors have submitted a 90-day budget with financial projections (the "Budget")[2] and the *Declaration of Thomas Watlington in Support of Chapter 11 Petitions and First Day Pleadings*

---

[1]    This sum appears to omit additional prepetition debt that the Debtors owe to the Lenders, including, approximately: (i) $315,000 on a letter of credit secured by a money market account; and (2) $39,866.95 on two corporate credit cards secured by a certificate of deposit and the Debtors' equipment and inventory.
[2]    Exhibit "B" to the Cash Collateral Motion.

DLA Piper LLP (US)

In re SOTERA WIRELESS, INC.                    -2-
Case No. 16-05968-LT11

eugen

(the "<u>Watlington Declaration</u>") [D.E. 11].  The Budget, however, shows that even if things go as well as the Debtors hope, by the end of this initial 90-day period, the Debtors' operations will have almost completely eliminated the Lenders $2.4 million in Cash Collateral.  The Debtors' own projections show that, by the end of this year, they will have only $1,000.00 in cash to operate their business; the Cash Collateral will be gone.

Notwithstanding this almost complete destruction of all of the Lenders' Cash Collateral, in their Cash Collateral Motion the Debtors assert that the Lenders are adequately protected.  As adequate protection of the Lenders' interests in the Cash Collateral, the Debtors offer to provide the Lenders replacement liens on the Lenders' prepetition collateral, and a superpriority claim to the extent of the diminution in value of the Lenders' prepetition collateral.  *Id.* at 3 – 4.  The Debtors assert that these proposed replacement liens are more than sufficient, because (according to the Debtors), the Lenders' interests in the Cash Collateral are protected by an equity cushion, in that the approximately $13 million of obligations outstanding under the Prepetition Loan is far less than the value of the Debtors' business, which the Debtors assert is no less than $30-$52 million, based on acquisition term sheets the Debtors claim to have received.  *Id.* at p. 12.

The means of adequate protection that the Debtors propose in the Cash Collateral Motion is insufficient, for at least two reasons.  First, Debtors' claimed value for their business is unsupported by any evidence at all; the Debtors notably have failed to submit to the Court any admissible evidence with respect to the term sheets, or other documents, which form the basis for their contention that their business is worth $30-$52 million, or more.  Moreover, the Debtors' assertions with respect to the value of their business, and the supposed existence of an equity cushion, conveniently ignore any consideration of the Debtors' other liabilities, which are mentioned nowhere in the Cash Collateral Motion or the Watlington Declaration.

Second, even if there were admissible evidence that the Debtors' business were worth what the Debtors claim it is, that would not establish the existence of an equity cushion for the Lenders, or that they are adequately protected for the $2.4 million diminution of their Cash Collateral. This is so because the Debtors' adequate protection analysis conflates two distinct matters: (a) the value of the Debtors' business and assets; and (b) the value of the Lenders' interest therein. As noted above, the Debtors maintain that the Lenders' collateral package does not include the Debtors' IP, and thus any adequate protection analysis of the Lenders' position must exclude the value of the IP. Thus, even if there were admissible evidence as to the enterprise valuations on which the Debtors rely, those valuations would dramatically overstate the degree to which the Lenders are adequately protected because those "valuations" include assets (the IP) that are a major component of value for the Debtors, but which the Debtors assert are not part of the Lenders' collateral.

## II.
## Argument

The Debtors have failed to meet their burden of proving that the Lenders' interest in the Cash Collateral is adequately protected. Specifically, (i) the Debtors have failed to produce any admissible evidence to support their contention that the Lenders' interests are adequately protected; and (ii) even if the Debtors' unsubstantiated allegations were to be accepted as true, the Debtors would still have failed to prove that the Lenders' interests in the Cash Collateral will be adequately protected. Accordingly, the Cash Collateral Motion should be denied, unless the Court requires the Debtors to provide adequate protection to the Lenders as described below.

A court may not allow a debtor to utilize a secured creditor's cash collateral unless (i) the creditor consents to use of its cash collateral, or (ii) the creditor's interests in the cash collateral are adequately protected. 11 U.S.C. § 363(c)(2)(A)

DLA PIPER LLP (US)

In re SOTERA WIRELESS, INC.                    -4-
Case No. 16-05968-LT11

1   and (e).  The debtor always bears the burden of proving, by a preponderance of the

2   evidence, that a creditor's interests in cash collateral are adequately protected.  11

3   U.S.C. § 363(p); *see also, Owens-Corning Fiberglass Corp. v. Center Wholesale,*

4   *Inc. (In re Center Wholesale, Inc.)*, 788 F.2d 541, 544 (9th Cir. 1986) (providing

5   that the debtor "has the burden of proof on the issue of adequate protection.");

6   *McCombs Properties VI, Ltd. v. First Texas Savings Association (In re McCombs*

7   *Properties VI, Ltd.)*, 88 B.R. 261, 268 (Bankr. C.D.Cal. 1988) ("[D]ebtor has the

8   burden of proving by a preponderance of the evidence that [a secured creditor] is

9   adequately protected against the debtor's use of cash collateral.").

10   **A. The Debtors Have Failed To Offer Any Admissible Evidence to Meet
      Their Burden To Establish That The Lenders Are Adequately**
11   **Protected**.

12      The Debtors have failed to produce any real evidence to substantiate either of

13   two key premises on which the Cash Collateral Motion is based: (1) that the Budget

14   accurately describes the projected operation of their business; or (2) that the

15   Lenders' interests are protected by an equity cushion.  The only "evidence" that the

16   Debtors submit in support of these two key assertions are the Budget itself and the

17   Watlington Declaration.    However, neither of these documents contains any

18   admissible, reliable evidence that (i) the projections in the Budget are accurate; or

19   (ii) the Lenders are protected by an equity cushion.

20      Regarding the Debtors' projections, neither the Watlington Declaration nor

21   the Cash Collateral Motion discloses who prepared the projections, what they are

22   based on, what the Debtors' historical financial performance has been, or what any

23   of the underlying limitations and assumptions are.   In short, the projections

24   contained in the Budget are no more than unauthenticated, unfounded and

25   inadmissible speculation.  Without the missing information identified above, it is

26   impossible for the Court or the Lenders to evaluate the Budget's reliability.

27   Accordingly, the Budget should be stricken from the record or disregarded.

28

DLA Piper LLP (US)

In re SOTERA WIRELESS, INC.                    -5-
Case No. 16-05968-LT11

With regard to the proposed existence of an equity cushion to adequately protect the Lenders' interests, the Debtors contend that such an equity cushion exists because the Lenders' secured claim of approximately $13 million is less than the value of the Debtors' business, which the Debtors claim is no less than $30 – $52 million.  However, the Debtors notably fail to produce the actual term sheets, or any other evidence, that would permit the Court or creditors to test the veracity of these assertions.  Similarly, the Debtors have failed to indicate who the offers are from, how much of the proposed consideration would be cash, and what contingencies there are in the term sheets.  Without this critical information, it is impossible to evaluate the economics of the transactions, how serious the potential buyers' interest might be, or whether the potential buyers are willing or able to close on a sale at the price advertised, in a reasonable time, *i.e.*, before the Debtors run out of cash in 90 days.

Further, with the limited information provided by the Debtors, it is impossible for the Court or the Lenders to determine what value, if any, would accrue to the Lenders if the Debtors closed on either of the term sheets.  As noted above, the Debtors assert that the Lenders' collateral does not include any of the Debtors' IP.  Presumably, the term sheets allocate significant value to the Debtors' IP – value that, if the Debtors are correct that the Lenders do not have a lien on the IP, would likely not be passed on to the Lenders if the Debtors sold their business pursuant to either term sheet.  Using the hypothetical enterprise value of the Debtors' business (as set forth in unseen term sheets for transactions that may never close), as a proxy for the value of the Lenders' interests, is like comparing apples to oranges.  Even if the Debtors' unsubstantiated representations that the offers are "real" were accepted as true, it is impossible for the Court or the Lenders to assess how much value is attributable to the Lenders' collateral.

DLA PIPER LLP (US)

In re SOTERA WIRELESS, INC.                      -6-
Case No. 16-05968-LT11

In sum, the Debtors' financial projections and the purported term sheets are hearsay, violate the best evidence rule, and are incomplete representations, at best.[3] Based on the scant information submitted by the Debtors, it is impossible for the Court or the Lenders to gauge (i) whether the Debtors' projections in the Budget are reliable; (ii) whether there are any serious offers to buy the Debtors' business; or (iii) whether there is any equity cushion protecting the Lenders' interests in the Cash Collateral. Accordingly, the Court should disregard the Budget, the Debtors' self-serving and unsupported valuations, and the Debtors' contentions that the Lenders' interests are adequately protected.

**B. The Debtors' Proposed Replacement Liens Do Not Provide The Lenders With Adequate Protection.**

Even if the Court were to accept the Budget as accurate, and were to further accept the Debtor's assertion that their business is worth at least $30 – $52 million, the Debtors would still have failed to meet their burden of showing that the Lenders' interest in the Cash Collateral is adequately protected. The Debtors' projections anticipate that they will essentially deplete the entire amount of the Lenders' Cash Collateral, over $2.4 million, within the next 90 days, and will have only $1,000 in cash on December 23, 2016. As dire as that is, the Lenders' initial review of the Budget indicates that, based on the Debtors' historical performance, the revenue levels projected in the Budget are actually overly-optimistic, especially in light of the Debtors' bankruptcy filing, which is not conducive to increasing

---

3    The Debtors also cite to a stock option valuation ("409A Valuation") completed by SVB Analytics in 2015, which supposedly valued the Debtors' equity at $98 million at that time, for the proposition that the Lenders' interests are adequately protected. See Cash Collateral Motion at p. 7. Like the term sheets, the Debtors did not initially produce 409A Valuation. For the same evidentiary reasons that the term sheet values should be disregarded, the 409A Valuation also should be disregarded. Additionally, the Court should be wary of the fact that a 409A Valuation is not necessarily reflective of the market value of the Debtors' assets (let alone the Lenders' collateral). Further, the 409A Valuation is much older than the two term sheets, which supposedly ascribe to the Debtors' business values that are a fraction of the 409A Valuation. If anything, this demonstrates that even before bankruptcy, the value of the Debtors' business was falling precipitously, which does not bode well for the value of the Lenders' collateral now. Only hours before the deadline to respond to the Cash Collateral Motion, the Debtors filed a new declaration that attached the 409A Valuation. The Lenders have not had sufficient time to review this document and, given the fact it could and should have been filed together with the Cash Collateral Motion, request that the Court disregard this late-filed pleading.

sales.

However, even if the Court were to accept the Debtors' revenue projections as realistic, the Budget fails to account for multiple, material recurring costs. For example, the Budget does not include any provision for professional fees, for either the Debtor or any Creditors' Committee. Similarly, the Budget is misleading in that it does not provide for any payments to the Lenders, even though the Debtors maintain that the Lenders are oversecured.[4] Even at the non-default rate, interest on the Debtors' obligations to the Lenders would accrue at the rate of at least $80,000 per month, exclusive of the Lenders' entitlement to attorneys' fees. Thus, even if the operation of the Debtors' business for 90 days uses "only" the $2.4 million of Cash Collateral the Debtors project in the Budget, the Lenders' collateral position actually will be worse than the Debtors represent, because, even if one were to assume that the value of the Debtor's assets will remain unchanged during this time, interest and attorneys' fees will increase the amount of the Lenders' claim during this period.

The Debtors, however, provide no evidence to support the assumption that the value of their assets (or the Lenders' collateral) will remain unchanged during the projection period. The Budget includes no information regarding what will happen to the Lenders' other collateral, including accounts receivables and inventory, during the projection period. Likewise, neither the Budget nor the Watlington Declaration provide any information as to the Debtors' other liabilities, such as other financial debt or trade payables. With these material shortcomings, the Debtors have failed to provide any meaningful information regarding the size of the equity cushion that they assert will adequately protect the Lenders' interests.

---

[4]    Because the Debtors assert that the Lenders are oversecured, the Lenders are entitled to postpetition interest and attorneys' fees pursuant to Bankruptcy Code Section 506(b). *See* Cash Collateral Motion at p. 12 ("The [Lenders' liens] in the Cash Collateral are adequately protected because the [] Lenders have a substantial equity cushion in the assets of the Debtor[s] that are worth significantly more than the $13.1 million secured by the [Lenders'] [] liens."

DLA Piper LLP (US)

In re SOTERA WIRELESS, INC.                                    -8-
Case No. 16-05968-LT11

Based on the foregoing, the Debtors have failed to meet their burden of proving by a preponderance of the evidence that the Lenders' interest in the Cash Collateral is adequately protected.  Accordingly, the Court should deny the Cash Collateral Motion in its present form.

### C. The Court Should Condition The Debtors' Use of Cash Collateral on the Debtors Providing Additional Forms of Adequate Protection.

Notwithstanding the foregoing, it is not the Lenders' intention to shut down the Debtors' business.  While the Lenders believe that the Debtors have failed to meet their burden to establish that the Lenders' interest in the Cash Collateral would be adequately protected if the Court were to grant the Cash Collateral Motion as proposed, the Lenders would be willing to consent to the Debtors' use of Cash Collateral, if the Court were to require the Debtors to provide adequate protection on the terms described below.

At a minimum, in addition to the replacement liens that the Debtors have agreed to provide, the Court should condition the Debtors' use of the Lenders' Cash Collateral on the Debtors granting to the Lenders adequate protection liens on, and superpriority claims against, the Debtors' IP.  According to the Debtors, the IP is presently unencumbered and represents a substantial portion of the Debtors' value. In addition, as additional protection of the Lenders' interests, the Court should:

1. Condition the Debtors' use of Cash Collateral on compliance with a budget that has been agreed to by the Debtors and the Lenders, subject to a variance of no greater than 5%;

2. Require the Debtors to provide the Lenders with comprehensive weekly financial reports, including rolling 13 week cash flows that show budget/actual variance;

3. Require the Debtors' management to participate in weekly calls or meetings with the Lenders to discuss the Debtors' operations and the status of the sale/refinance process;

4. Require the Debtors to produce to the Lenders copies of any term sheets, letters of intent, indications of interest, or offers to buy the Debtors' business or refinance Debtors' obligations to the Lenders within 24 hours of receipt;

5. Establish the following deadlines to keep the Debtors on target to sell their business or refinance their debt to the Lenders, noncompliance with which would result in termination of the Debtors' ability to use the Lenders' Cash Collateral:

    a. <u>December 15, 2016</u>: Deadline (i) for the Debtors to close a sale or refinancing transaction ("Transaction") or (ii) for the effective date of a plan of reorganization ("Plan"), which, under either scenario, pays the Debtors' debt to the Lenders in full in cash;

    b. <u>November 30, 2016</u>: Deadline to (i) obtain Court approval of a Transaction or (ii) confirm a Plan;

    c. <u>October 30, 2016</u>: Deadline to obtain Court approval for (i) a bid and sale process in connection with a Transaction or (ii) approval of a disclosure statement for a Plan; and

    d. <u>October 15, 2016</u>: Deadline for Debtors to file with the Court a Plan and disclosure statement, or a stalking horse asset purchase agreement and sale bid procedures, or refinance documents, for any Transaction.

1    **WHEREFORE**, the Lenders respectfully request that the Court enter an

2   order (a) denying the Cash Collateral Motion or, alternatively, conditioning the

3   Debtors' use of the Lenders' cash collateral pursuant to the conditions set forth

4   above; and (b) granting the Lenders such other and further relief that the Court

5   deems just and equitable.

6   Date:  OCTOBER 3, 2016                    DLA PIPER LLP (US)

7

8                                            By: _____

9                                            TROY ZANDER
                                             AND ERIC GOLDBERG
10

11                                           **DLA PIPER LLP (US)**
                                             2000 AVENUE OF THE STARS
12                                           SUITE 400 NORTH TOWER
                                             LOS ANGELES, CA 90067-4704
13                                           TELEPHONE:  310.595.3000
                                             FACSIMILE:  310.595.3300
14
                                             COUNSEL TO OXFORD FINANCE, LLC
15                                           AND SILICON VALLEY BANK

16

17

18

19

20

21

22

23

24

25

26

27

28

DLA PIPER LLP (US)

In re SOTERA WIRELESS, INC.                    -11-
Case No. 16-05968-LT11

## CERTIFICATE OF SERVICE

I, the undersigned, certify:

That I am, and at all times hereinafter mentioned was, more than 18 years of age;

That on October 3, 2016, I served a true copy of the *Limited Objection of Oxford Finance, LLC and Silicon Valley Bank to the Debtors' Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral* by placing a true and correct copy of the aforementioned document(s) in the **U.S. Mail**, first class mail, with postage thereon fully prepaid at San Diego, California, in the ordinary course of business on the following persons and/or entities:

| | |
|---|---|
| Victor A. Vilaplana<br>*Counsel for the Debtors*<br>Foley & Lardner, LLP<br>3579 Valley Center Drive, Suite 300<br>San Diego, CA 92130<br>vavilaplana@foley.com | Haeji Hong<br>*Office of the United States Trustee*<br>402 W. Broadway, Suite 600<br>San Diego, CA 92101-8511 |
| Cooley, LLP<br>101 California Street<br>San Francisco, CA 94111 | Zhonghuan Hi-Tech Corp.<br>2901 Tasman Dr., Suite 107<br>Santa Clara, CA 92054 |
| Nortech Systems, Inc.<br>NW 7791 PO Box 1450<br>Minneapolis, MN 55485 | Extension, LLC<br>1950 West Cook Road, Suite 101<br>Fort Wayne, IN 46818 |
| Gibson, Dunn & Crutcher, LLP<br>PO Box 840723<br>Los Angeles, CA 90084 | Bienert, Miller & Katzman<br>903 Calle Amanecer, Suite 350<br>San Clemente, CA 92673 |
| G&I VIII Sorrento, LP<br>PO Box 844967<br>Los Angeles, CA 90084 | Novasyte, LLC<br>3207 Grey Hawk Ct., Suite #100<br>Carlsbad, CA 92010 |
| OSI Optoelectronics, Inc.<br>16383 Collections Center Dr.<br>Chicago, IL 60693 | Integrity Global Services, Inc.<br>6755 Mira Mesa Blvd.<br>San Diego, CA 92121 |
| Molex<br>PO Box 101853<br>Atlanta, GA 30392 | University of Washington<br>Grant & Contract Accounting<br>Box 354966<br>Seattle, WA 98195 |

DLA PIPER LLP (US)

In re SOTERA WIRELESS, INC.
Case No. 16-05968-LT11

| | |
|---|---|
| TargetCW<br>9475 Chesapeake Drive<br>San Diego, CA 92123 | Regain Biotech Corp.<br>15f, 207-1, Beixin Rd., Sec. 3<br>New Taipei City, 231 TW |
| Amazon Web Services, Inc.<br>PO Box 84023<br>Seattle, WA 98124 | Acuity Law Group<br>14677 Via Bettona, Suite 110<br>San Diego, CA 92127 |
| JOT Automation<br>10413 Torre Ave.<br>Cupertino, CA 95014 | US Micro Products<br>6207 Bee Caves Road, Suite 330<br>Austin, TX 78746 |
| Custom Converting, Inc.<br>2625 Temple Heights Drive<br>Oceanside, CA 92056 | Promenade Software<br>16 Technology Drive, Suite 100<br>Irvine, CA 92121 |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 3, 2016 at San Diego, California.

Maria E. Valentino

DLA Piper LLP (US)

In re SOTERA WIRELESS, INC.
Case No. 16-05968-LT11