CSD 1001A [11/15/04]

Name, Address, Telephone No. & I.D. No.

Victor A. Vilaplana (CA Bar No. 58535) vavilaplana@foley.com
Marshall J. Hogan (CA Bar No. 286147) mhogan@foley.com
FOLEY & LARDNER LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
858-847-6700 / 858-792-6773 - Fax
Attorneys for Debtors and Debtors-in-Possession

Order Entered on October 20, 2016
by Clerk U.S. Bankruptcy Court
Southern District of California

# UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re.
SOTERA WIRELESS, INC.,

SOTERA WIRELESS, INC.,
CASE NO. 16-05968-LT11

SOTERA RESEARCH, INC.,
CASE NO. 16-05969-LT11
                                                        Debtor.

BANKRUPTCY NO. 16-05968-LT11

(Jointly Administered)

Date of Hearing: October 20, 2016
Time of Hearing: 2:30 p.m.
Name of Judge: Hon. Laura S. Taylor

## AGREED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

**IT IS ORDERED THAT** the relief sought as set forth on the continuation pages attached and numbered two (2) through 2 with exhibits, if any, for a total of 17 pages, is granted. Motion/Application Docket Entry No. 7

//
//
//
//
//
//

DATED: October 20, 2016

Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under Fed. R. of Bankr. P. 9011 that the relief in the order is the relief granted by the court.

Submitted by:

FOLEY & LARDNER LLP
(Firm name)

By: /s/ Victor A. Vilaplana
Attorney for ☒ Movant ☐ Respondent

CSD 1001A
4850-4755-4107.1

American LegalNet, Inc.
www.USCourtForms.com

AGREED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

DEBTOR: In re SOTERRA WIRELESS, INC.                          CASE NO: 16-05968-LT11

The Order attached hereto as Exhibit 1 is hereby approved.

Exhibit 1

# EXHIBIT 1

Exhibit 1                                             000003

Signed by Judge Laura Stuart Taylor October 20, 2016

ERIC GOLDBERG (157544)
TROY ZANDER (167823)
**DLA PIPER LLP (US)**
2000 AVENUE OF THE STARS SUITE 400 NORTH TOWER
LOS ANGELES, CA  90067-4704
TELEPHONE:  310.595.3000

COUNSEL TO OXFORD FINANCE, LLC AND SILICON VALLEY BANK

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>SOTERA WIRELESS, INC.,<br><br>   Debtor.<br><br>SOTERA WIRELESS, INC.,<br><br>   CASE NO. 16-05968-11<br><br>SOTERA RESEARCH, INC.,<br><br>   CASE NO. 16-05968-11 | Lead Case No. 16-05968-LT11<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**AGREED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL**<br><br>**CONTINUED HEARING**<br><br>Date:     October 20, 2016<br>Time:    2:30 p.m.<br>Place:   Dept. 3, Room 129 |

This AGREED FINAL ORDER RE USE OF CASH COLLATERAL (this "Order") is based on the following:

A.     Debtors Sotera Wireless, Inc. ("Borrower") and Sotera Research, Inc. (the "Guarantor," and together with the Borrower, the "Debtors") each filed a voluntary chapter 11 petition before this Court on September 30, 2016 ("Petition Date").  The Debtors are operating their businesses as debtors in possession, and no trustee or Creditors Committee ("Committee") has yet been appointed.

B.     On the Petition Date, the Debtors filed their First Day Motion For Entry Of Interim And Final Orders Authorizing Use Of Cash Collateral Pursuant To 11 U.S.C. §363 And Setting Final Hearing [Dkt. No. 7] ("Cash Collateral Motion").  Pursuant to the

Cash Collateral Motion, the Debtors sought authority to use certain cash collateral (as defined in Bankruptcy Code section 363(a), the "Cash Collateral") in which Oxford Finance, LLC and Silicon Valley Bank (collectively, the "Lenders") have a security interest.

C. On October 3, 2016, the Lenders filed their Limited Objection, etc. [Dkt. No. 24] (the "Lenders' Objection") with respect to the Cash Collateral Motion. After discussions between the Debtors and the Lenders, the parties agreed to the terms on which the Lenders would consent to the Debtors' interim use of Cash Collateral, pending a continued hearing on October 11, 2016 (the "Final Hearing"). Thereafter, on October 11, 2016, this Court entered its Amended Interim Order On First Day Motion To Use Cash Collateral Pursuant To 11 U.S.C. Section 363 [as amended, Dkt. No. 53] (the "First Interim Order").

D. After the entry of the First Interim Order, the Debtors and the Lenders continued to negotiate with regard to the Debtors' use of Cash Collateral. The Debtors and the Lenders now agree to the findings set forth below, and have further agreed on the terms and conditions under which the Lenders consent to the Debtors' use of Cash Collateral, as set forth herein. The Debtors and the Lenders agree that the terms of this Order shall supersede those of all prior orders regarding the use of Cash Collateral, effective upon the entry of this Order

E. The Borrowers, the Guarantor, and the Lenders are party to that certain Amended And Restated Loan And Security Agreement dated as of September 12, 2014 (the "LSA"). Pursuant to the LSA, the Lenders made loans to the Debtors in the initial principal amount of $20 million. As of the Petition Date, the amount owed to the Lenders and outstanding under the LSA totaled approximately $13,094,567.6, exclusive of accrued interest, fees and charges that had not yet been charged to the loan balance as of the Petition Date. That amount, together with any amounts to which the Lenders are entitled under the LSA, is referred to herein as the "Obligations". Each of the

Debtors acknowledges the amount and validity of the Obligations, subject to the right of any Committee or trustee to investigate.

F. The Debtors' Obligations to the Lenders under the LSA are secured by security interests in substantially all of the Debtors' assets, as set forth in Exhibit "A" to the LSA (as described therein, the "Collateral").  As provided in the LSA, the Collateral does not include any Intellectual Property (as defined in the LSA, "IP").  However, the LSA does provide, and the Debtors acknowledge and do not dispute, that the Lenders' Collateral does include all accounts generated by, and all proceeds of, the IP.  The Debtors acknowledge that the Lenders have a valid and perfected first priority security interest in the Collateral, subject only to any challenge thereto that might be raised by any Committee and/or any trustee as more fully set forth below in this Order.

G. In order to operate their business, the Debtors need to use the Lenders' Cash Collateral.  However, the Debtors' projections show that their operations will use cash, such that the operation of their business will result in a diminution of the Lenders' Cash Collateral and Collateral.

H. Having reviewed the record in this case, including all the foregoing, the Court adopts the foregoing as its findings of facts, and further finds that the Lenders are entitled to adequate protection of their interests in the Collateral and the Cash Collateral, as and to the extent set forth herein.  Accordingly, it is hereby **ORDERED** that:

1. Validity and Enforceability of the LSA and the Security Interests Granted Thereunder.  Without prejudice to the rights of any Committee and/or trustee, the Debtors each hereby acknowledge that (a) the LSA and all documents executed in connection therewith are valid and enforceable in accordance with their terms; (b) the Borrower and Guarantor were (and are) indebted to the Lenders with respect to the Obligations; and (c) the Lenders have a valid, duly perfected and unavoidable first priority security interest in, and first priority lien upon, the Collateral, including the Cash Collateral.  Without prejudice to the rights of any Committee and/or trustee, the

1  Guarantor hereby acknowledges and agrees that the guaranty provided for under the
2  LSA is valid and enforceable in accordance with its terms, and that it has no defenses,
3  counterclaims or offsets to its liability and obligations thereunder.
4         2.   Consent to Use of Cash Collateral.  Upon entry of this Order in the
5  form approved by counsel to the Lenders, provided that such Order is not thereafter
6  modified in any manner unacceptable to the Lenders, vacated, reversed or withdrawn
7  and, provided further, that the enforcement of such Order shall not thereafter have been
8  stayed, the Lenders hereby consent to Debtors' use of the Cash Collateral, from the
9  date of the entry of this Order, on the terms and conditions set forth herein, to
10 November 11, 2016 at 5:00 p.m. pacific time, or such later date as may be set forth in a
11 further Court order entered upon a stipulation between the Debtors and the Lenders.
12 The use of Cash Collateral authorized hereby shall be limited to payment of the
13 ordinary, reasonable and necessary expenses actually paid by the Debtors in
14 connection with the operation of the Debtors' business, and chapter 11 administrative
15 and other related expenses attendant thereto ("Ordinary Operating Expenses"), strictly
16 in accordance with the budget attached hereto as Exhibit "A" (the "Budget").  From time
17 to time, the Budget may be amended with the written consent of the Lenders, which
18 consent may be withheld in their sole discretion.  Ordinary Operating Expenses that
19 may be paid pursuant to the Budget shall not include, inter alia:

   a.   Any payment or distribution to any affiliate, equity holder or insider of any Debtor outside of the ordinary course of business;

   b.   Any payment or distribution in the ordinary course of business which is not made in exchange for full and fair cash equivalent consideration;

   c.   Professional fees or costs incurred by any of the Debtors, by any Committee, or by any other party in connection with the investigation, assertion or prosecution of any claim, cause of action or proceeding by any of the Debtors, any affiliate or creditor of any of the Debtors or any Committee, to the extent any such claim, cause of action or proceeding is against any of the Lenders; and

    d.    Any expenses incurred after (i) the conversion of any of the Debtors' chapter 11 cases to a case under chapter 7 of the Bankruptcy Code and/or (ii) the appointment of a trustee or an examiner with expanded powers, in any of the Debtors' chapter 11 cases.

    3.    <u>Adequate Protection & Covenants</u> - As adequate protection for the Lenders, the Debtors shall observe the following covenants:

    a.    <u>LSA Covenants</u>.  The Debtors shall comply with all affirmative and negative covenants set forth in Sections 6 and 7 of the LSA;

    b.    <u>New Covenants</u>.  The Debtors shall comply with the following additional covenants:

    1.    <u>Budget</u> – expenditures shall be limited to those set forth in the Budget, and each line item in the Budget shall be subject to a variance of no more than 10% for any given weekly period.

    2.    <u>Reporting</u> – no later than Thursday of each week, the Debtors shall deliver to the Lenders a rolling 13 week cash flow budget, which budget shall indicate for each line item in the prior week's budget the extent to which each projected amount varied from the actual amount.

    3.    <u>Information/Access</u> – the Debtors shall make their management available to meet with the Lenders' representatives by phone or in person, no less than weekly, to discuss any aspect of the Debtors' business, including the Debtors' efforts to obtain DIP financing, and/or to consummate a sale or refinance transaction for their business (in any such case, a "<u>Transaction</u>").  The Debtors also shall provide to the Lenders, within 24 hours of their receipt thereof, copies of any offers, term sheets, expressions of interest, letters of intent, etc., relating to any potential Transaction.

    4.    <u>Milestones</u> – the Debtors shall comply with the following strict schedule with respect to a Transaction that provides for the Obligations to be paid in full, in cash, at closing (such a Transaction shall be referred to herein as an "<u>Acceptable Transaction</u>"):

       •  November 8, 2016 – deadline for the Debtors to have a signed term sheet for an Acceptable Transaction.

5.    Stop Loss Condition. The Debtors shall not permit there to occur or exist any Stop Loss Condition. For purposes of this Order, a "Stop Loss Condition" shall exist if, during any rolling four week period the Debtors' cash on deposit is less than 80% of the amount set forth in the Budget for such time.

6.    DIP Financing ROFR. To the extent the Debtors seek to obtain any DIP financing, (i) no less than 48 hours before seeking Court approval of any such financing, the Debtors shall (provide the Lenders with a copy of any term sheet or other such documentation for such proposed financing, and (ii) the Lenders shall have the right of first refusal to provide the Debtors with DIP financing on substantially equal or better terms.

4.    Post-Petition Interest and Fees – as additional adequate protection:

    a.    Post-Petition Interest – the Lenders shall be entitled to accrue post-Petition Date interest on the Obligations at the Default rate set forth in the LSA, which is 12.46% per annum. Such interest charges shall constitute allowed administrative claims, secured by the liens granted pursuant to this Order, although no current payments of interest shall be required to be made during the course of the cases.

    b.    Post-Petition Fees – the Lender shall be entitled to accrue, and add to the balance of the Obligations, post-Petition Date fees, charges and reasonable attorneys fees, as provided for in the LSA. Such charges shall constitute allowed administrative claims, secured by the liens granted pursuant to this Order, although no payments for such amounts shall be required during the course of the chapter 11 cases.

    c.    Estate Professional Fees & Expenses - notwithstanding subsections 4(a) and (b) above, to the extent that the Lenders' claims for

post-petition fees and interests are not ultimately satisfied in full from the Collateral, the Lenders' unsecured administrative expense claims for such fees and expenses shall be subordinated to the allowed fees and expenses of estate professionals, to the extent such professional fees and expenses are either provided for in the Budget or were paid with retainers provided before the Petition Date.

5.  Adequate Protection Liens.  As adequate protection for the Debtors' use of the Collateral, the Lenders are hereby granted the following:

a.  As security for the repayment of the Obligations, a replacement first priority security interest in, and lien upon, all assets of the Debtors owned as of the Petition Date or acquired thereafter, including any and all proceeds thereof, as and to the extent that the Lenders had valid liens in such assets prior to the Petition Date (collectively, the "Replacement Collateral," and such replacement security interest and lien, the "Replacement Lien").  The Replacement Lien shall have the same validity, enforceability and priority as the Lenders' pre-petition liens and security interests in the Collateral, and shall be enforceable to the extent of any diminution in the value of the Lenders' interests in the Collateral, as such Collateral existed as of the Petition Date, as a result of the use, sale or lease of the Cash Collateral in accordance with this Order, the Debtors' use, sale or lease of any other Collateral in accordance with the terms of the Bankruptcy Code or the imposition of the automatic stay upon the Lenders pursuant to the Bankruptcy Code.  Without limiting the generality of the foregoing, the Replacement Lien (i) shall be subject only to non-avoidable, valid, enforceable and perfected liens and security interests in the Replacement Collateral of Debtors, as pre-petition debtors, that existed on the Petition Date, and is not subject to section 552(a) of the Bankruptcy Code, (ii) shall at all times be senior to the rights of the

Debtors and any successor trustee or estate representative in these chapter 11 cases or any subsequent case or proceedings under the Bankruptcy Code, and (iii) shall be senior to any security interest in or lien on the Replacement Collateral that is avoided or otherwise preserved for the benefit of the Debtors' estates under any provision of the Bankruptcy Code; and

  b. a valid, first priority additional lien on the Debtors' IP, but only in an amount equal to the total diminution in the amount of Cash Collateral following the Petition Date (the "IP Lien").  The IP Lien shall be (i) senior to any other lien on the IP that existed on the Petition Date, and is not subject to Section 552(a) of the Bankruptcy Code, (ii) at all times senior to the rights of the Debtors and any subsequent trustee or estate representative in these or any subsequent case for the Debtors under the Bankruptcy Code, and (iii) senior to any security interest in or lien on the IP that is avoided or otherwise preserved for the benefit of the Debtors' estates under any provision of the Bankruptcy Code.

6. Committee and Trustee Rights.  The granting of the Replacement Liens to the Lenders pursuant to this Order and other adequate protection given to the Lenders hereunder shall be without prejudice to the right, if any, of the Committee or any trustee appointed in these cases or any subsequent chapter 7 cases, to seek entry of an order (i) disallowing any of the Lenders' claims based upon the Obligations, (ii) avoiding any security interest or lien of the Lenders in the Collateral, (iii) modifying the amount, validity, priority or extent of the Lenders' security interests, liens or claims, or (iv) providing any other relief of any type or nature whatsoever, legal or equitable, against the Lenders or otherwise permitting recovery from the Lenders on account of their relationship with the Debtors arising under, in connection with or otherwise relating to the LSA prior to the Petition Date, provided, that the Committee and any such trustee shall only have thirty (30) days from the date of appointment of such committee within

Signed by Judge Laura Stuart Taylor October 20, 2016

1  which to file any such objection or commence any such action, whether with respect to
2  the Lenders' security interest, lien or claims, or otherwise, except as provided in this
3  paragraph below.  Any such objection or action shall set forth with reasonable
4  particularity the basis for such objection or action.  If no such objection or action is filed
5  on or before thirty (30) days after the date of appointment of such committee, the
6  Obligations shall be deemed allowed as a secured claim within the meaning of
7  Bankruptcy Code section 506 for all purposes in connection with these cases.
8  Thereafter, any and all objections or actions (including, without limitation, those under
9  Bankruptcy Code sections 510, 544, 547, 548, 549 and/or 550) by any party (including,
10 without limitation, the Committee, any other statutory committee appointed in these
11 cases or any subsequently-appointed chapter 11 or chapter 7 trustee), with respect to
12 the validity, sufficiency, extent, perfection, or avoidability of the Lenders' security
13 interests in, and liens upon, the Collateral or the allowability of their claims shall be
14 forever barred unless, with respect solely to a chapter 11 or chapter 7 trustee, the Court
15 orders otherwise.

16            7.      <u>Reservation of Rights</u>.  Nothing contained in this Order constitutes
17 an acknowledgement or admission, with respect to the adequacy of the protection of the
18 interest of the Lenders in the Collateral, and Replacement Collateral or shall preclude
19 the Lenders from seeking additional or different adequate protection (as defined in
20 section 361 of the Bankruptcy Code).  This Order is without prejudice to the right of the
21 Lenders at any time to seek relief from the automatic stay.  Neither of the Lenders
22 waives any of its rights under the LSA, or any other document, or the Bankruptcy Code.
23 The rights, claims, liens, security interests and priorities of the Lenders arising
24 hereunder are in addition to, and not intended as a waiver or substitution for, the rights,
25 claims, liens, security interests and priorities of the Lenders under the LSA.

26            8.      <u>Perfection of New Liens</u>.  The Replacement Liens on the
27 Replacement Collateral and the IP Lien granted to the Lenders shall be, and hereby
28 are, deemed duly and automatically granted and perfected and recorded under all

applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order or other act shall be required to effect such grant or perfection; <u>provided</u>, <u>however</u>, that notwithstanding the provisions of section 362 of the Bankruptcy Code, the Lenders may, at their sole option, file or record or cause the Debtors to execute, file or record, at the Debtors' expense, such UCC financing statements, notices of liens and security interest, mortgages and other similar documents as the Lenders may require.

        9.    <u>Priority Claims</u>.  The Lenders shall have all of the rights accorded them pursuant to section 507(b) of the Bankruptcy Code in respect of the adequate protection provided in this Order; <u>provided</u>, <u>however</u>, that the Lenders waive any and all right to seek recovery or disgorgement of any fees paid to professionals (other than ordinary course professionals) retained pursuant to Sections 327 or 1103(a) of the Bankruptcy Code, <u>provided</u>, and only to the extent, the amount of such fees does not exceed either (a) the amount of fees to be paid to such professionals in accordance with the Budget, or (b) the amount of the retainer provided to the applicable professional prior to the Petition date; and, <u>provided</u> <u>further</u>, such fees have been approved by the Court pursuant to a final non-appealable order of the Court.

        10.    <u>Default / Extension of Stipulation</u>.

        a.    If either of the Debtors breaches any material obligation under this Order (including any failure to comply with the covenants set forth herein), the Lenders shall give written notice to Debtors' counsel by email of such breach, and of the Lenders' election to terminate the Debtors' ability to use Cash Collateral in accordance with this Order. Such notice shall be effective upon transmittal.  The Lenders expressly reserve the right to waive a default of any of Debtors' obligations hereunder, but shall have no duty to waive any such default.  Forty-eight (48) hours after transmittal of such notice, the right to use Cash Collateral pursuant to the terms hereof shall cease.  Upon termination of the

|    |   |
|----|---|
| 1  | Debtors' right to use Cash Collateral, the Debtors shall be prohibited from |
| 2  | using any Cash Collateral without previously obtaining an Order from this |
| 3  | Court approving the continued use of Cash Collateral, and only after an |
| 4  | actual hearing on no less than two (2) business days' prior written notice |
| 5  | to the Lenders; <u>provided</u>, <u>however</u>, that the Lenders reserve the right to |
| 6  | continue the effectiveness of the term of this Order by written agreement |
| 7  | with the Debtors, in the sole and exclusive discretion of the Lenders, |
| 8  | without further Order of this Court; <u>provided</u> <u>further</u>, <u>however</u>, that nothing |
| 9  | herein shall require the Lenders to continue the term of this Order, but a |
| 10 | copy of any such agreement to extend the term hereof shall be filed with |
| 11 | the Court and served on the special service list in these cases. |
| 12 |    b.  Notwithstanding anything to the contrary set forth herein, |
| 13 | upon (a) the conversion of any of the cases to liquidation under chapter 7 |
| 14 | of the Bankruptcy Code; (b) the appointment of a trustee or an examiner |
| 15 | with expanded powers in any of these cases; (c) the granting of relief from |
| 16 | the automatic stay to any of the Lenders; (d) the dissolution of the Debtors |
| 17 | or the cessation of substantially all of their business; (e) any breach by |
| 18 | either of the Debtors of any payment obligation hereunder; (f) any request |
| 19 | by any Debtor or any other party in interest, including, without limitation, |
| 20 | the filing of a motion or other attempt, either to prime any of the security |
| 21 | interests and liens of the Lenders, or to create a priority claim with |
| 22 | superpriority over the claims of the Lenders under section 507(b) of the |
| 23 | Bankruptcy Code; (g) the granting of any claim with superpriority over the |
| 24 | adequate protection claims of the Lenders; (h) termination of the Debtors' |
| 25 | exclusive periods to file a plan of reorganization or to seek acceptance |
| 26 | thereof; (i) the security interests or liens of the Lenders cease or fail to be |
| 27 | valid, binding and enforceable first priority security interests and liens; (j) |
| 28 | the dismissal of any of these cases; or (k) any stay, reversal, vacation, |

modification or other amendment in any respect concerning this Order (except to the extent acceptable to the Lenders), then, in any such event, the Lenders' consent to the use of their Cash Collateral shall be automatically revoked without any requirement of further Bankruptcy Court Orders, hearings or proceedings; <u>provided</u>, <u>however</u>, that Lenders reserve the right to waive any such event and to continue the effectiveness of this Order in their sole and exclusive discretion without further order of this Court by written notice to the Debtors.

11.     **<u>Limitation on Section 506(c) Charges</u>.  No costs or expenses of administration or other charge, lien, assessment or claim incurred at any time following the entry of this Order (including any expenses set forth in the Budget) or any person or entity shall be imposed against the Lenders, the Collateral, the IP, or the Replacement Collateral under section 506(c) of the Bankruptcy Code or otherwise.**

12.     <u>Successors and Assigns</u>.  This Order shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns, including, without limitation, any trustee who might be appointed in these cases or any subsequent chapter 7 or chapter 11 cases.

Exhibit 1

# EXHIBIT A

Exhibit 1                                                                                    000016

Signed by Judge Laura Stuart Taylor October 20, 2016

Exhibit 1

**Sotera Wireless - Chapter 11 Budget**
Updated 10/10/2016
$ thousands

| | BK filing 9/30/2016 | Week ending: 10/7/2016 Act. | 10/14/2016 | 10/21/2016 | 10/28/2016 | | Week ending: 11/4/2016 | 11/11/2016 | 11/18/2016 | 11/25/2016 | | Week ending: 12/2/2016 | 12/9/2016 | 12/16/2016 | 12/23/2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | |
| Customer collections | $ - | $ 27 | $ 359 | $ 32 | $ 19 | | $ 124 | $ 186 | $ 20 | $ 20 | | $ 21 | $ 21 | $ 22 | $ 22 |
| Military contract reimbursements | $ - | $ - | $ 35 | $ - | $ 35 | | $ - | $ - | $ - | $ 35 | | $ - | $ - | $ - | $ 35 |
| Insurance claims | $ - | $ - | $ - | $ - | $ - | | $ - | $ - | $ - | $ - | | $ - | $ - | $ - | $ - |
| Subtotal | $ - | $ 27 | $ 394 | $ 32 | $ 54 | | $ 124 | $ 186 | $ 20 | $ 55 | | $ 21 | $ 21 | $ 22 | $ 57 |
| **Disbursements - Fixed/Semi-Fixed** | | | | | | | | | | | | | | | |
| Payroll | $ - | $ - | $ (384) | $ - | $ (350) | | $ - | $ (340) | $ - | $ - | | $ (320) | $ - | $ (310) | $ - |
| Retention bonus program | $ - | $ - | $ - | $ - | $ - | | $ - | $ - | $ - | $ - | | $ - | $ - | $ - | $ - |
| Principal repayments | $ - | $ - | $ - | $ - | $ - | | $ - | $ - | $ - | $ - | | $ - | $ - | $ - | $ - |
| Interest** | $ - | $ - | $ - | $ - | $ - | | $ - | $ - | $ - | $ - | | $ - | $ - | $ - | $ - |
| Rent/utilities | $ - | $ (80) | $ - | $ - | $ (81) | | $ - | $ - | $ - | $ (81) | | $ - | $ - | $ - | $ (81) |
| Singapore funding | $ - | $ - | $ (20) | $ - | $ - | | $ - | $ (20) | $ - | $ - | | $ - | $ (20) | $ - | $ - |
| Subtotal | $ - | $ (80) | $ (404) | $ - | $ (431) | | $ - | $ (360) | $ - | $ (81) | | $ (320) | $ (20) | $ (310) | $ (81) |
| **Disbursements - Variable** | | | | | | | | | | | | | | | |
| Legal fees | $ - | $ - | $ (25) | $ - | $ (8) | | $ - | $ (25) | $ - | $ (8) | | $ - | $ - | $ - | $ (8) |
| Inventory buys | | $ (24) | $ (87) | $ (75) | $ (45) | | $ (45) | $ (45) | $ (40) | $ (25) | | $ (25) | $ (25) | $ (25) | $ (25) |
| Extension licenses | | $ - | $ - | $ - | $ - | | $ - | $ - | $ - | $ - | | $ - | $ - | $ - | $ - |
| Outside programmers | $ - | $ - | $ (5) | $ - | $ (5) | | $ - | $ (5) | $ - | $ (5) | | $ - | $ (5) | $ - | $ (5) |
| Clinical consultants | $ - | $ (25) | $ (10) | $ (8) | $ (8) | | $ (8) | $ (8) | $ (7) | $ (7) | | $ (6) | $ (6) | $ (6) | $ (6) |
| Consultants | $ - | $ - | $ - | $ - | $ - | | $ - | $ - | $ - | $ - | | $ - | $ - | $ - | $ - |
| T&E | | $ (3) | $ (15) | $ (12) | $ (12) | | $ (10) | $ (10) | $ (10) | $ (10) | | $ (10) | $ (10) | $ (10) | $ (10) |
| Lease payments | | $ - | $ - | $ - | $ (12) | | $ - | $ - | $ - | $ (12) | | $ - | $ - | $ - | $ (12) |
| U.S. Trustee fees | | $ - | $ - | $ - | $ (3) | | $ - | $ - | $ - | $ (4) | | $ - | $ - | $ - | $ (3) |
| Insurance premiums | | $ - | $ - | $ - | $ - | | $ (96) | $ - | $ - | $ - | | $ (61) | $ - | $ - | $ - |
| Other | $ - | $ - | $ (14) | $ (14) | $ (14) | | $ (14) | $ (14) | $ (13) | $ (13) | | $ (13) | $ (13) | $ (13) | $ (14) |
| Subtotal | $ - | $ (52) | $ (156) | $ (109) | $ (107) | | $ (173) | $ (107) | $ (70) | $ (84) | | $ (115) | $ (59) | $ (54) | $ (83) |
| **Net cash (outflow)/inflow** | $ - | $ (105) | $ (166) | $ (77) | $ (484) | | $ (49) | $ (281) | $ (50) | $ (110) | | $ (414) | $ (58) | $ (342) | $ (107) |
| Beginning available cash (excludes collateral a/c's) | * $ 2,063 | $ 2,063 | $ 1,958 | $ 1,792 | $ 1,715 | | $ 1,231 | $ 1,182 | $ 902 | $ 852 | | $ 742 | $ 328 | $ 270 | $ (72) |
| Ending available cash (excludes collateral a/c's) | $ 2,063 | $ 1,958 | $ 1,792 | $ 1,715 | $ 1,231 | | $ 1,182 | $ 902 | $ 852 | $ 742 | | $ 328 | $ 270 | $ (72) | $ (179) |

\* - subject to receipt of cut-off bank statements
\*\* - does not reflect accrual of bank loan interest

Exhibit A
Exhibit 1

000017

Signed by Judge Laura Stuart Taylor October 20, 2016