# EXHIBIT A

000045

VICTOR A. VILAPLANA (CA BAR NO. 58535)
vavilaplana@foley.com
MARSHALL J. HOGAN (CA BAR NO. 286147)
mhogan@foley.com
**FOLEY & LARDNER LLP**
ATTORNEYS AT LAW
3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA 92130
TELEPHONE:  858.847.6700
FACSIMILE:  858.792.6773

ATTORNEYS FOR DEBTORS AND
DEBTORS-IN-POSSESSION

### UNITED STATES BANKRUPTCY COURT
#### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>SOTERA WIRELESS, INC.,<br><br>DEBTOR. | LEAD CASE NO.  16-05968-LT11<br><br>CHAPTER 11<br><br>(JOINTLY ADMINISTERED)<br><br>**DEBTORS' THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION** |
| SOTERA WIRELESS, INC.,<br><br>CASE NO. 16-05968-LT11<br><br>SOTERA RESEARCH, INC.,<br><br>CASE NO. 16-05969-LT11 | |

### INTRODUCTION

Sotera Wireless, Inc. ("Wireless") and Sotera Research, Inc. ("Research") together ("Sotera") propose the following third amended plan of reorganization (the "Plan") for the resolution of the outstanding claims against and equity interests in Sotera.  Sotera is the proponent of the Plan within the meaning of § 1129 of the Bankruptcy Code, 11 U.S.C. § 1129. Reference is made to Sotera's disclosure statement, to be filed with the Plan (the "Disclosure Statement"), for a discussion of Sotera's history, business, results of operations, and for a summary and analysis of the Plan.  There also are other agreements and documents (the "Plan Supplement"), which will be filed with the Bankruptcy Court, that are referenced in the Plan or the Disclosure Statement and that will be available for review.

Exhibit A

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

**A.**   **Scope of Definitions**

Unless otherwise stated, all terms not defined herein shall have the meaning set forth in the Bankruptcy Code and the Bankruptcy Rules.  Where there is a conflict between the defined terms herein and any terms in the Bankruptcy Code or the Bankruptcy Rules, the definitions herein shall control.  The following terms when used in the Plan shall have the meanings set forth in this Article.

**B.**   **Definitions**

**1.1**   **"Administrative Expense Claim"** shall mean a Claim for costs and expenses of administration allowed under §§ 503(b) or 507(b) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of Sotera (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under §§ 328(a), 330(a), 331 or 333 of the Bankruptcy Code, including Fee Claims; (c) other Allowed Claims with priority afforded under §§ 503(b) or 507(b) of the Bankruptcy Code pursuant to a Final Order; and (d) all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

**1.2**   "**Allowed Claim**" shall mean:

**a.**   A Claim that (i) has been listed by Wireless or Research in its Schedules as other than disputed, contingent or unliquidated; and (ii) is not otherwise a Disputed Claim;

**b.**   A Claim (i) for which a Proof of Claim or request for payment of Administrative Expense Claim has been filed by the applicable Bar Date or otherwise been deemed timely filed under applicable law; and (ii) that is not otherwise a Disputed Claim; or

**c.**   A Claim that is allowed:  (i) in any Stipulation of Amount and Nature of Claim executed by the Reorganized Debtor and the Claimant on or after the Effective Date; (ii) in any contract, instrument or other agreement entered into in connection with the Plan and, if prior to the Effective Date, approved by the Bankruptcy Court; (iii) pursuant to a Final Order; or (iv) pursuant to the terms of the Plan.

**1.3**   **"Amended Certificate of Incorporation and Bylaws"** means the respective amended and restated certificate of incorporation and amended and restated bylaws of the Reorganized Debtor, in substantially the form to be included in the Plan Supplement.

**1.4**   **"Avoidance Actions**" shall mean Causes of Action held by Sotera and/or the Estate under §§ 544, 547, 548, 549, 550 or 551 of the Bankruptcy Code.

///

///

2

Exhibit A

Exhibit A

**1.5** **"Ballot"** shall mean the form or forms distributed to each holder of an Impaired Claim or Interest entitled to vote on the Plan on which the holder indicates acceptance or rejection of the Plan.

**1.6** **"Bankruptcy Code"** shall mean Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect at the relevant time.

**1.7** **"Bankruptcy Court"** shall mean the United States Bankruptcy Court, Southern District of California, or any such Court having jurisdiction over the Chapter 11 Case.

**1.8** **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, as may be amended and as supplemented by any local bankruptcy rules adopted by the Bankruptcy Court.

**1.9** **"Bar Date"** shall mean the applicable bar date by which a Proof of Claim must be or must have been filed, as established by an order of the Bankruptcy Court, including the Bar Date Order and the Confirmation Order.

**1.10** **"Bar Date Order"** shall mean an order of the Bankruptcy Court establishing Bar Dates for Filing Proofs of Claims in the Chapter 11 Case, as the same may be amended, modified or supplemented.

**1.11** **"Board of Directors"** shall mean that body vested with and having the powers and duties of governing the Reorganized Debtor.

**1.12** **"Business Day"** shall mean any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.13** **"Cash"** shall mean legal tender of the United States of America and equivalents thereof.

**1.14** **"Causes of Action"** shall mean any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims held by Sotera or the Estate, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity, or otherwise.

**1.15** **"Chapter 11 Case"** shall mean the above-captioned cases commenced under Chapter 11 of the Bankruptcy Code by Wireless and Research, and consolidated for administrative purposes.

**1.16** **"Claim"** shall mean a "claim," as defined in § 101(5) of the Bankruptcy Code, against the Debtor.

**1.17** **"Claimant"** shall mean the holder of a Claim.

**1.18** **"Class"** shall mean a class of Claims or Interests as that term is used in the § 1122 of the Bankruptcy Code.

3

**1.19** **"Class 5 Promissory Note"** shall mean the unsecured promissory note, in substantially the form included in the Plan Supplement, executed by the Reorganized Debtor and delivered to the Trade and Service Provider Unsecured Claims Class Representative as selected by the Committee ("Class 5 Representative") on the Effective Date for the benefit of the holders of Trade and Service Providers Unsecured Claims in the principal amount equal to ten percent (10%) of their Allowed Claim, bearing regular interest from the Effective Date at 8% per annum and maturing on the date that is six (6) months after the Effective Date.

**1.20** **"Class 5 Representative"** shall have the meaning ascribed thereto in the definition of Class 5 Promissory Note.

**1.21** **"Class 6 Pool"** shall mean cash reserved for holders of Allowed Claims in Class 6 in the amount of three million, three hundred twenty-five thousand dollars ($3,325,000), or such greater amount as may be agreed by Sotera and the DIP Agents.

**1.22** **"Committee"** shall mean the statutory official committee of unsecured creditors in the Chapter 11 Case appointed pursuant to § 1102 of the Bankruptcy Code, as such Committee may be reconstituted from time to time.

**1.23** **"Confirmation Date"** shall mean the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.24** **"Confirmation Hearing"** shall mean the hearing before the Bankruptcy Court, held under § 1128 of the Bankruptcy Code, to consider confirmation of this Plan and related matters, as such hearing may be adjourned or continued from time to time.

**1.25** **"Confirmation Order"** shall mean the order entered by the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**1.26** **"Debtor" or "Debtors"** shall mean Wireless and/or Research as debtors under Chapter 11 of the Bankruptcy Code.

**1.27** "**DIP Agents**" shall mean Sanderling Venture Partners VI, L.P. and Regain Biotech Corp. in their capacity as agents under the Note Purchase Agreement.

**1.28** "**DIP Lenders**" small mean the DIP Agents and other persons or entities that are purchasers under the Note Purchase Agreement.

**1.29** "**DIP Loan**" small mean the post-petition financing provided under the Note Purchase Agreement.

**1.30** **"DIP Loan Obligation"** shall mean the principal amount of indebtedness outstanding under the Note Purchase Agreement, accrued interest thereon and any and all unpaid expenses of the DIP Agents and DIP Lenders including without limitation, outstanding DIP Agent's attorneys' fees and expenses.

**1.31** **"DIP Order"** small mean the First Interim, Final and/or any subsequent orders approving the DIP Loan.

Exhibit A

**1.32** **"Disallowed Claim"** shall mean a Claim or any portion thereof, that (a) has been disallowed by a Final Order, (b) is scheduled at zero or as contingent, disputed or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, or (c) is not listed on the Schedules and as to which a Bar Date has been set but no Proof of Claim has been timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court.

**1.33** **"Disbursing Agent"** shall mean the Reorganized Debtor, or any Person designated by the Reorganized Debtor to serve as disbursing agent under this Plan.

**1.34** **"Disclosure Statement"** shall mean the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to the Plan and has been prepared and distributed by Sotera, as the same may be amended, modified or supplemented.

**1.35** **"Disputed Claim"** shall mean a Claim or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim and includes, without limitation, Claims that (a) (i) have not been listed on the Schedules by Wireless or Research or have been scheduled at zero or as unknown, contingent, unliquidated or disputed, and (ii) are not the subject of an objection filed in the Bankruptcy Court but as to which the time for filing an objection has not yet expired, (b) that are the subject of a Proof of Claim that differs in nature, amount or priority from the Schedules, or (c) are the subject of an objection filed with the Bankruptcy Court, which objection has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

**1.36** **"Distribution Date"** shall mean an Initial Distribution Date, a Subsequent Distribution Date or a Final Distribution Date.

**1.37** **"Effective Date"** shall mean the Business Day on which all conditions set forth in Article X of this Plan have been either satisfied or waived as provided in section 10.2 of this Plan.

**1.38** **"Estate"** shall mean the estates created for Wireless and Research in the Chapter 11 Case pursuant to § 541 of the Bankruptcy Code.

**1.39** **"Executory Contract" or "Unexpired Lease"** shall mean a contract or lease to which the Debtor is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

**1.40** "**Exit Financing Agreement**" shall mean a $30 million equity financing to be entered into as of the Effective Date by and among the Reorganized Debtor and the Investors. The Exit Financing Agreement shall be on the terms and conditions summarized in the Memorandum of Terms annexed hereto as <u>Exhibit A</u>.

**1.41** **"Fee Claim"** shall mean a Claim under §§ 328, 330(a), 331, 333, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Case.

**1.42** **"Final Distribution Date"** shall have the meaning ascribed thereto in Section 7.5 of the Plan.

5

Exhibit A

**1.43** **"Final Order"** shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely filed, or as to which any appeal that has been filed or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order; provided, however, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

**1.44** **"Impaired"** shall mean when used with reference to a Claim or Interest, a Claim or Interest that is "impaired" within the meaning of § 1124 of the Bankruptcy Code.

**1.45** **"Interest" or "Interests"** shall mean the common stock, convertible preferred stock, and any other equity or ownership in Sotera and options, interests, or other equity, ownership, or profits interests in Sotera.

**1.46** **"Initial Distribution Date"** shall have the meaning ascribed thereto in Section 7.3 of the Plan.

**1.47** "Investors" shall mean a person that enters into the Exit Financing Agreement.

**1.48** **"Lien" or "Liens"** shall mean a lien, security interest or charge against or interest in property of the Debtor to secure payment of a debt or performance of an obligation owed by the Debtor.

**1.49** "**Masimo**" shall mean Masimo Corporation.

**1.50** "**Masimo Claims**" shall mean all potential and actual claims and causes of action that Masimo Corporation may assert or has asserted against Sotera through and including the Effective Date, all of which were contained in the informal proof of claim (redacted) filed on December 30, 2016 and the claims asserted in that certain adversary proceeding, styled *Masimo Corporation v. Sotera Wireless Inc.*, Adversary Proceeding No. 16-90154-LT filed in this Chapter 11 case and since purportedly dismissed by Masimo.

**1.51** "**Masimo Claim Order**" shall mean entry of an order of the Bankruptcy Court or other court of competent jurisdiction fixing, by allowance or otherwise, the Masimo Claims, which order has not been vacated, reversed, modified, amended, or stayed.

**1.52** **"New Common Stock"** shall mean the shares of common stock of the Reorganized Debtor to be issued on the Effective Date in accordance with Article 6.7 of this Plan.

**1.53** **"New Junior Preferred Stock"** shall mean the shares of new junior preferred stock to be issued under the terms of the Exit Financing Agreement.

Exhibit A

**1.54** **"New Series A Preferred Stock"** shall mean the shares of new Series A preferred stock to be issued under the terms of the Exit Financing Agreement.

**1.55** **"Note Purchase Agreement"** shall mean the Secured Note Purchase Agreement dated as of December 2, 2016, by and among Sotera, the DIP Agents, for the DIP Lenders, as such may be amended from time to time.

**1.56** **"Officers"** shall mean those persons chosen by the Board of Directors as the officers who shall perform the executive duties of the Reorganized Debtor.

**1.57** **"Old Preferred Stock"** shall mean the existing preferred stock of Wireless.

**1.58** **"Organizational Documents"** shall mean the bylaws, articles of incorporation, corporate charters, certificates of formation, limited liability agreements or other documents or agreements that govern or affect the corporate formation and governance of the Debtor and the Reorganized Debtor.

**1.59** **"Ordinary Course Administrative Expense Claims"** shall mean Administrative Expense Claims incurred in the ordinary course of Sotera's business, including the Administrative Expense Claims of trade vendors and suppliers of Sotera.

**1.60** **"Person"** shall mean an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in § 101(27) of the Bankruptcy Code), or other entity.

**1.61** **"Petition"** shall mean the voluntary petition for relief filed by the Wireless and Research with the Bankruptcy Court on September 30, 2016 under Chapter 11 of the Bankruptcy Code, and any amendments or modifications thereto.

**1.62** **"Petition Date"** shall mean the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case.

**1.63** **"Plan"** shall mean this first amended Chapter 11 plan of reorganization for Sotera, either in its present form or as it may be altered, amended, or modified, including all Exhibits thereto.

**1.64** **"Plan Supplement"** shall mean the supplement to this Plan filed by Sotera with the Bankruptcy Court on or before the Effective Date.

**1.65** **"Pre-Petition Lenders"** shall mean Silicon Valley Bank and Oxford Finance LLC as lenders under the Pre-Petition Loan Agreement.

**1.66** **"Pre-Petition Loan Agreement"** shall mean the amended and restated loan and security agreement with the Pre-Petition Lenders.

**1.67** **"Pre-Petition Loan Claim"** shall mean a claim against Sotera arising pursuant to the Pre-Petition Loan Agreement.

7

**1.68** **"Priority Claim"** shall mean a Claim that is entitled to priority in payment pursuant to § 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

**1.69** **"Priority Tax Claim"** shall mean a Claim that is entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.

**1.70** **"Professional"** shall mean any professional employed in the Chapter 11 Case pursuant to §§ 327, 328, or 1103 of the Bankruptcy Code or any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to § 503(b)(4) of the Bankruptcy Code.

**1.71** **"Proof of Claim"** shall mean Official Form 10 as is used in the Bankruptcy Court or similar filing as evidence of a Claim, properly filled-out, executed with supporting documentation, and filed with the Bankruptcy Court before any applicable Bar Date.

**1.72** **"Property"** means all assets or property of the Estate of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action (whether direct or derivative), previously or now owned by Sotera or the Reorganized Debtor, as the case may be, or acquired by the Estate, as defined in § 541 of the Bankruptcy Code.

**1.73** **"Pro Rata"** shall mean when used with reference to a distribution to holders of Allowed Claims in a particular Class or other specified group of Claims pursuant to Article V of the Plan, proportionately so that with respect to a particular Allowed Claim in such Class, the ratio of (a)(i) the amount of Cash distributed on account of such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the amount of Cash distributed on account of all Allowed Claims in such Class or group of Claims to (ii) the amount of all Allowed Claims in such Class or group of Claims. When, and if used, with respect to holders of Interests, "pro rata" shall mean the distribution as described in the Exit Financing Agreement.

**1.74** **"Record Date"** shall mean the record date for determining the eligibility of a holder of an Interest in Classes 7 (including all subclasses), 8 and 9, which date shall be the date on which the Bankruptcy Court enters an order approving the Disclosure Statement.

**1.75** **"Rejection Claim"** shall have the meaning ascribed thereto in Section 9.1 of the Plan.

**1.76** **"Reorganized Debtor"** shall mean Wireless and Research on and after the Effective Date as substantively consolidated pursuant to the Plan.

**1.77** **"Reorganization Plan Event #1"** shall mean entry of the Masimo Claim Order determining that the Masimo Claims (in the aggregate) are equal to or less than the amount necessary to make the Class 6 Pool sufficient to pay all Allowed Claims in Class 6 in full.

**1.78** **"Reorganization Plan Event #2"** shall mean entry of the Masimo Claim Order determining that the Masimo Claims (in the aggregate) exceed the amount necessary to make the Class 6 Pool sufficient to pay all Allowed Claims in Class 6 in full.

**1.79** **"Reorganization Term Loan"** shall mean the loan described in section 6.9 in this Plan.

8

Exhibit A

**1.80** **"Schedules"** shall mean the schedules of Wireless' or Research's assets and liabilities and the statement of financial affairs filed by Wireless or Research, as required by § 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

**1.81** **"Secured"** shall mean, with respect to a Claim that is allegedly secured, secured to the extent provided under § 506(a)(1) of the Bankruptcy Code.

**1.82** **"Secured Tax Claim"** shall mean a Claim that would otherwise meet the description of an unsecured Claim of a governmental unit under § 507(a)(8) of the Bankruptcy Code but is secured by a Lien on property in which the Estate has an interest, to the extent of the value of the Claimant's interest in the Estate's interest in such property.

**1.83** **"Stipulation of Amount and Nature of Claim"** shall mean a stipulation or other agreement between Sotera or the Reorganized Debtor and a Claimant, or an agreed order of the Bankruptcy Court, establishing the amount and nature of a Claim.

**1.84** **"Trade Claim"** shall have the meaning set forth in section 3.5 of this Plan.

**1.85** **"Unclassified Claims"** shall mean those Claims described in Article II of this Plan.

**1.86** **"Unimpaired"** shall mean, when used with reference to a Claim, a Claim that is not Impaired.

**1.87** **"United States Trustee"** shall mean the United States Trustee for the Southern District of California, Tiffany Carroll, Esq. acting.

**C.**    **Rules of Interpretation**

For purposes of the Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit filed or to be filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan, the Confirmation Order or otherwise; (d) any reference to a Person as a holder of a Claim includes that Person's successors, assigns and affiliates; (e) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) subject to the provisions of any contract, articles of incorporation, bylaws, similar constituent documents, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (i) the rules of construction set forth in § 102 of the Bankruptcy Code will apply to the extent not inconsistent with any other provision of this Section 1(C).

9

**D.**    <u>**Computation of Time**</u>

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

**ARTICLE II**
**TREATMENT OF UNCLASSIFIED CLAIMS**

**2.1    Allowed Administrative Expense Claims.**  Subject to the provisions contained in Section 2.2 of this Plan, unless otherwise agreed in writing by the Reorganized Debtor and the holder of an Allowed Administrative Expense Claim, the Disbursing Agent shall pay to each holder of an Allowed Administrative Expense Claim an amount equal to its Allowed Administrative Expense Claim on the latest of (a) the Effective Date or as soon thereafter as is practicable, (b) for Ordinary Course Administrative Expense Claims, when such Claims are due and payable in the ordinary course of Sotera's business, (c) 30 days after the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim by the entry of a Final Order, and (d) the date the Reorganized Debtor is otherwise obligated to pay such Administrative Expense Claim in accordance with the terms and provisions of the particular transactions giving rise to such Claim, the terms and provisions of this Plan and any orders of the Bankruptcy Court relating thereto.

**2.2    Requests for Allowance of Administrative Expense Claims.**  Except as expressly set forth to the contrary in this Plan, each Person, including each Professional, shall file an application for an allowance of an Administrative Expense Claim in conformity with the following Subsections:

**a.    Professionals.**  All Professionals shall file a final application for the allowance of a Fee Claim on or before forty (40) days following the Effective Date.  Objections to any Fee Claim must be filed and served on the Reorganized Debtor, counsel for the Committee, the UST and the requesting Professional no later than twenty (20) days after the filing of the applicable application for allowance of the Fee Claim, provided, however, that with respect to Piper Jaffray fees and expenses, the procedures described herein are subject to the provisions in the order authorizing the employment of Piper Jaffray.

**b.    Other Administrative Expense Claimants.**  All holders of Administrative Expense Claims other than Professionals shall file a request for payment of an Administrative Expense Claim with the Bankruptcy Court on or before forty (40) days following the Effective Date.  Holders of Administrative Expense Claims, including such Persons asserting a Claim under § 503(b)(9) of the Bankruptcy Code, who do not file a request for payment by such deadline shall be forever barred from asserting such Claims against Sotera, the Reorganized Debtor or their respective property and assets (whether cash or otherwise).

**2.3    Allowed Priority Tax Claims.**  Pursuant to § 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed in writing by the holder of a Priority Tax Claim and the Reorganized Debtor, each holder of an Allowed Priority Tax Claim shall be paid a value, as of the Effective Date, equal to the unpaid portion of such Allowed Priority Tax Claim in quarterly cash payments beginning on the final day of the first full quarter after the Effective Date and ending five years after the Petition Date.

Exhibit A

**2.4    Other Provisions Concerning Treatment of Priority Tax Claims.** Notwithstanding the provisions of Section 2.3 of the Plan, the holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim, except as Allowed under § 507(a)(8)(G) of the Bankruptcy Code.  Other than as Allowed under § 507(a)(8)(G) of the Bankruptcy Code, any such Claim or demand for any such penalty (i) will be subject to treatment in Class 7 pursuant to § 726(a)(4) of the Bankruptcy Code and (ii) the holder of an Allowed Priority Tax Claim will not assess or attempt to collect such penalty from the Reorganized Debtor or its property.

**2.5    DIP Loan Claim.**  On the Effective Date or as soon thereafter as is practicable, the DIP Loan Obligation shall be converted to New Series A Preferred Stock as provided in the Note Purchase Agreement (including, without limitation, warrants to be issued thereunder) and the Exit Financing Agreement.

### ARTICLE III
### CLASSES OF CLAIMS AND INTERESTS

All Claims and Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in the following Classes.  In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims, as described in Sections 2.1 and 2.3 of the Plan, have not been classified and thus are excluded from the following Classes, except with respect to the Masimo Claims to the extent they are alleged to include an Administrative Expense Claims.

**3.1    Class 1 (Priority Claims)** shall consist of all Priority Claims.

**3.2    Class 2 (Secured Pre-Petition Lenders' Claim)** shall consist of the claims of the Pre-Petition Lenders under the Pre-Petition Loan Agreement, which are fully Secured.

**3.3    Class 3 (Secured Tax Claims)** shall consist of all Secured Tax Claims.

**3.4    Class 4 (Other Secured Claims)** shall consist of all other Secured Claims.

**3.5    Class 5 (Trade and Service Provider Unsecured Claims (the "Trade Claims"))** shall consist of all unsecured Claims for goods and services provided to Sotera prepetition in the ordinary course of business designated as a Class 5 Claim on Schedule "A" to the Disclosure Statement, the holder of which agrees to provide such goods or services to the Reorganized Debtor on substantially the same terms and conditions.

**3.6    Class 6 (Other Unsecured Claims)** shall consist of all unsecured Claims against Sotera that are not Administrative Claims, Priority Claims, Priority Tax Claims, and Trade Claims, and including, without limitation, the Masimo Claim.

**3.7    Class 7 (Convertible Preferred)** shall consist of the following subclasses of Convertible Preferred Stock, Series A, B, C, D, D-1, and E.

**a.**    Subclass 7A shall consist of the holders on the Record Date Series A Convertible Preferred Stock issued by Wireless during 2005, 2006 and 2007.

11

**b.**    Subclass 7B shall consist of the holders on the Record Date of Series B Convertible Preferred Stock issued by Wireless during 2008, 2009 and 2010.

**c.**    Subclass 7C shall consist of the holders on the Record Date of Series C Convertible Preferred Stock issued by Wireless on March 29, 2010.

**d.**    Subclass 7D shall consist of the holders on the Record Date of Series D Convertible Preferred Stock issued by Wireless during 2011 and 2012.

**e.**    Subclass 7D-1 shall consist of the holders on the Record Date of Series D-1 Convertible Preferred Stock issued by Wireless during 2013.

**f.**    Subclass 7E shall consist of the holders on the Record Date of Series E Convertible Preferred Stock issued by Wireless during 2014 and 2016.

**3.8**    **Class 8 (Common Stock in Wireless)** shall consist of all the common stock of Wireless issued and outstanding.

**3.9**    **Class 9 (Common Stock in Research)** shall consist of all of the common stock of Research issued and outstanding.

**3.10**    **Class 10 (Claims of Interest holders)** shall consist of all Claims arising from rescission of a purchase or sale of a security of Wireless or of an affiliate of Wireless, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a Claim.

## ARTICLE IV
## IDENTIFICATION OF IMPAIRED CLASSES AND VOTING CLASSES;
## EFFECT OF REJECTION BY ONE OR MORE CLASSES
## OF CLAIMS OR INTERESTS

**4.1**    **Impaired Classes of Claims Entitled to Vote.**  Holders of Claims or Interests in each Impaired Class are entitled to vote as a Class to accept or reject this Plan, other than Classes that are deemed to accept or reject this Plan as provided in Sections 4.2 and 4.3 herein. Accordingly, the votes of holders of Claims or Interests in Classes 5, 6, 7, and 8 shall be solicited with respect to this Plan.

**4.2**    **Class Deemed to Accept the Plan.**  Classes 1, 2, 3, and 4 are Unimpaired by this Plan.  Accordingly, under § 1126(f) of the Bankruptcy Code, holders of claims in these classes are conclusively deemed to have accepted this Plan, and the votes of such holders will not be solicited.

**4.3**    **Class Deemed to Reject the Plan.**  Holders of Interests in Class 9 and holders of Claims in Class 10 are not receiving or retaining any property under the Plan on account of such Interests and, therefore, are conclusively deemed to have rejected the Plan.  Accordingly, holders of Interests in Class 9 and holders of Claims in Class 10 are not entitled to vote on the Plan.

**4.4**    **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.**  To the extent that any Impaired Class entitled to vote rejects the Plan or is deemed to have rejected the Plan, Sotera will request confirmation of this Plan, as it may be amended or modified from time

to time, under § 1129(b) of the Bankruptcy Code.

# ARTICLE V
## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

**5.1     Treatment of Class 1 – Priority Claims**.  Unless otherwise agreed in writing by the Reorganized Debtor and the holder of an Allowed Priority Claim, the Reorganized Debtor subject to payment to Classes 2 and 3, shall pay to each holder of an Allowed Priority Claim an amount equal to its Allowed Priority Claim on the latest of (a) the Effective Date or as soon thereafter as is practicable, (b) 30 days after the date on which such Priority Claim becomes an Allowed Priority Claim by the entry of a Final Order, and (c) the date the Reorganized Debtor is otherwise obligated to pay such Allowed Priority Claim in accordance with the terms and provisions of the particular transactions giving rise to such Claim, the terms and provisions of this Plan and any orders of the Bankruptcy Court relating thereto.

**5.2     Treatment of Class 2 – Secured Pre-Petition Loan Claim**.  On the Effective Date or as soon thereafter as is practicable, the allowed Pre-Petition Loan Claim shall be treated as fully Secured without regard to § 506(a)(1) of the Bankruptcy Code, and shall be paid in full in cash.

**5.3     Treatment of Class 3 – Secured Tax Claims.**  Pursuant to § 1129(a)(9)(D) of the Bankruptcy Code, unless otherwise agreed in writing by the holder of a Secured Tax Claim and the Reorganized Debtor, each holder of an Allowed Secured Tax Claim shall retain the Lien securing its Allowed Secured Tax Claim and shall be paid a value as of the Effective Date equal to the unpaid portion of such Allowed Secured Tax Claim in quarterly Cash payments beginning on the final day of the first full quarter after the Effective Date and ending five years after the Petition Date.

**5.4     Treatment of Class 4 – Other Secured Claims.**  On the Effective Date, unless otherwise agreed in writing by a Claimant and the Reorganized Debtor, each holder of an Allowed Other Secured Claim will be paid as of the Effective Date, an amount equal to the amount of such Allowed Other Secured Claims.

**5.5     Treatment of Class 5 – Trade and Services Provider Claims.**  Holders of an allowed Class 5 Claim shall receive on the Effective Date or as soon thereafter as practicable an amount equal to ninety percent (90%) of their Allowed Claim with the balance of ten percent (10%) due with interest at eight percent (8%), one hundred eighty (180) days from the Effective Date.

**5.6     Treatment of Class 6 – Other Unsecured Claims.**

**a.     In the event of a Reorganization Plan Event #1**.  On the Effective Date or as soon thereafter as practicable, each holder of an allowed Class 6 Claim shall be paid in full from the Class 6 Pool as of the Effective Date an amount equal to the amount of its Allowed Claim with interest, at a rate equal to the federal judgement rate in effect as of the Petition Date, for the from the Petition Date through the Effective Date.  Unexpended amounts in the Class 6 Pool, after reconciliation of all Class 6 Claims, will be paid to the Reorganized Debtor; or

Exhibit A

**b.** **In the event of a Reorganization Plan Event #2**. On the Effective Date or as soon thereafter as practicable, each holder of an allowed Class 6 Claim shall receive a pro rata share of the Class 6 Pool.

**5.7** **Treatment of Class 7 – Convertible Preferred Interests.**

**a.** **In the event of a Reorganization Plan Event #1**. Each holder of an a Class 7 Interest shall receive on account of and in exchange for their Interest property as specified in the Exit Financing Agreement.

**b.** **In the event of a Reorganization Plan Event #2**. Holders of Class 7 Interests shall receive nothing on account of such Interests.

**5.8** **Treatment of Class 8** – **Common Stock in Wireless**.

**a.** **In the event of a Reorganization Plan Event #1**. Holders of Common Stock in Wireless shall retain their Interests in Wireless which shall be the Reorganized Debtor upon substantive consolidation with Research as described below.

**b.** **In the event of a Reorganization Plan Event #2**. Holders of Class 8 Interests shall receive nothing on account of such Interests.

**5.9** **Treatment of Class 9** – **Common Stock in Research**. Holders of Common Stock in Research shall receive nothing on account of such Interest.

**5.10** **Treatment of Class 10 – Claims of Interest holders.** Holders of Claims arising out of or which otherwise relate to an Interest in Classes 7 (including all subclasses), 8 and 9 shall receive nothing on account of such Claims.

**ARTICLE VI**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**6.1** **Continued Corporate Existence and Vesting of Assets in the Reorganized Debtor**. As of the Effective Date, the Reorganized Debtor shall exist as a corporate entity in accordance with applicable law pursuant to its Amended Certificate of Incorporation and Bylaws, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date and amended as necessary to reflect the substantive consolidation of Wireless and Research. Except as otherwise provided in this Plan, on and after the Effective Date, all property of the Estate, including all claims, rights and Causes of Action, shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances, and Interests. On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of Property and compromise or settle any Claims without supervision of or approval of the Bankruptcy Court free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order. Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for professional fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

Exhibit A

**6.2    Corporate Action.**  Each of the matters provided for under this Plan involving the corporate structure of Sotera or corporate action to be taken by or required of Sotera, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by shareholders, creditors, officers or directors of Sotera or the Reorganized Debtor.  The Confirmation Order shall constitute an order authorizing and effecting the dissolution of Research pursuant to Delaware General Corporation Law section 303, and the Reorganized Debtor may seek and obtain such further orders of the Bankruptcy Court as it deems necessary and appropriate to complete the dissolution of Research.

**6.3    Certificate of Incorporation and Bylaws.**  On the Effective Date or as soon thereafter as is practicable, the Reorganized Debtor shall file with the Secretary of State of the State of California, in accordance with the California Corporation Code, the Amended Certificate of Incorporation and Bylaws.  The Amended Certificate of Incorporation and Bylaws shall become the Amended Certificate of Incorporation and Bylaws of the Reorganized Debtor.  The Amended Certificate of Incorporation and Bylaws for the Reorganized Debtor shall be included in the Plan Supplement.

**6.4    Substantive Consolidation of Wireless and Research**.  Wireless and Research shall be substantively consolidated for all purposes.  The result of such substantive consolidation is that the creditors of Research shall be treated as creditors of Wireless under the Plan, the Interests in Research shall be cancelled, the inter-company debt owed by Wireless to Research will be cancelled, and Research shall be wound up and dissolved as soon as practicable after the Effective Date.  The Plan shall serve as, and shall be deemed to be, a motion for substantive consolidated to be approved by the Confirmation Order.

**6.5    Release of Liens.**  Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, on the Effective Date and upon payment as provided in this Plan, all mortgages, deeds of trust, Liens or other security interests against the property of the Estate vesting in the Reorganized Debtor will be fully released and discharged.  The Reorganized Debtor shall be authorized to file or record on behalf of creditors such Uniform Commercial Code termination statements, real property releases or reconveyances, or other documents or instruments as may be necessary to implement the provisions of this Section 6.5.

**6.6    Investors' Fees and Expenses.**  At or immediately after the Closing, Sotera shall pay the reasonable fees and expenses (including attorneys' fees) incurred by Sanderling  Venture Partners VI, L.P. (or its affiliate) and Regain Biotech Corp. (or its affiliate) in connection with the negotiation and documentation of the Plan and any other documents contemplated herein, and related activities (including, without limitation, appearances before the Bankruptcy Court).

**6.7    Cancellation of Interests and Authorization and Issuance of New Stock**.

        **a.**    As set forth in the Exit Financing Agreement, as of the Effective Date, the Old Preferred Stock shall be converted to New Common Stock and New Junior Preferred Stock and New Series A Preferred Stock shall be issued as provided under the Exit Financing Agreement.

**b.** On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor shall issue the New Common Stock to be distributed pursuant to the Plan without any further act or action by any other party under applicable law, regulation, order or rule. The issuance of the New Common Stock and the distribution thereof under the Plan shall be exempt from registration under the Securities Act, the Bankruptcy Code and applicable state securities laws. All documents, agreements and instruments entered into, on or as of the Effective Date contemplated by or in furtherance of the Plan, including the Exit Financing Agreement and any other agreement entered into in connection with the foregoing, shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto.

**c.** All of the shares of New Common Stock, the New Junior Preferred Stock and the New Series A Preferred Stock issued pursuant to the Plan shall be duly authorized, validly issued, and if applicable, fully paid and non-assessable.

**6.8** **The Exit Financing Agreement**.

**a.** On the Effective Date and simultaneously with the vesting of Sotera's assets in the Reorganized Debtor, the Reorganized Debtor shall enter into the Exit Financing Agreement with the Investors.

**6.9** **The Reorganization Term Loan**.

**a.** On the Effective Date, the Reorganized Debtor shall enter into the Reorganization Term Loan, in the amount of up to $20,000,000:

**b.** The Reorganization Term Loan shall mature no earlier than 24 months from the Effective Date.

**c.** The Reorganization Term Loan shall be secured by a first-priority Lien on substantially all of the tangible, real and personal, assets of Reorganized Debtor, except its intellectual property.

**6.10** **Provisions Relating to Post-Confirmation Administration of the Reorganized Debtor**.

**a.** **Board of Directors.** As of the Effective Date, the Board of Directors shall be the governing body of the Reorganized Debtor for one year or such later time when a shareholders' meeting is scheduled pursuant to the Organizational Documents or applicable non-bankruptcy law, whichever is longer, and shall assume the governance of the Reorganized Debtor including, but not limited to, determining who shall serve as the Reorganized Debtor's Officers, supervisors, managers and executive employees.

**b.** **Identity of Board of Directors.** On the Effective Date, the term of the current members of the board of directors of Sotera, if any, will expire. The identity of the initial members of the Board of Directors shall be included in the Plan Supplement.

**c.** **Other Provisions.** Other provisions governing the service, term and continuance in office of the members of the Board of Directors shall be designated pursuant to

the Exit Financing Agreement and set forth in the Organizational Documents of the Reorganized Debtor.

**6.11    Disbursing Agent.**  On the Effective Date, the Reorganized Debtor shall have the authority to serve as, or appoint, the Disbursing Agent to carry out the duties set forth in this Plan.  The Reorganized Debtor shall have the authority to replace the Disbursing Agent at any time, with or without cause, subject to the terms of any agreement between the Reorganized Debtor and the Disbursing Agent.  The Reorganized Debtor shall file any agreement with the Disbursing Agent with the Bankruptcy Court and serve such agreement on the United States Trustee, the Class 6 Representative and Masimo.

**6.12    Closing of Case.**  If, after the Effective Date, the Chapter 11 Case is closed, such closing, (a) shall not alter, amend, revoke, or supersede the terms of this Plan, (b) shall not affect any rights of Sotera, the holders of Claims or Interests or the treatment of any other Person under this Plan, (c) shall continue to cause the terms of this Plan to remain binding on all Persons, (d) shall cause all orders of the Bankruptcy Court to remain in full force and effect, and (e) shall cause the Bankruptcy Court to retain all jurisdiction set forth in Article XII of this Plan.

**6.13    Effectuating Documents; Further Transactions.**  The chief executive officer, the chief financial officer, chairman of Sotera's board of directors or any other executive officer of Sotera shall be authorized to execute, deliver, file, or record such contracts, instruments, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The secretary or assistant secretary of Sotera shall be authorized to certify or attest to any of the foregoing actions.

**6.14    Withholding and Reporting Requirements**.  In connection with this Plan, the Reorganized Debtor shall (a) comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority; (b) timely file all tax returns as required by law to be filed; (c) continue to engage accountants or such other professionals to prepare and file all tax returns as required by law to be filed; (d) take such other actions as are reasonably necessary, including the allocation of sufficient funds, to file such returns; and (e) shall timely pay all taxes arising under any requirements or tax returns applicable to this Plan.

**6.15    Quarterly Reports and United States Trustee's Fees**.  Sotera's obligation of filing monthly financial reports with the United States Trustee shall pass to and become the obligation of the Reorganized Debtor and such obligation shall continue following the Confirmation Date until the obligation to pay the United States Trustee's fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) which obligation shall end upon entry of Order Closing the case which shall be entered as soon as practicable after the Confirmation Order is entered and the Plan becomes effective.

**6.16    Preservation of Causes of Action**.

**a.    Vesting of Causes of Action.**  In accordance with § 1123(b) of the Bankruptcy Code, except as otherwise provided in this Plan and (ii) the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all claims and Causes of Action held by Sotera and/or the Estate, whether arising before or after the Petition Date.  All such claims and Causes of Action, along with all rights, interests and defenses related thereto, shall vest with the Reorganized Debtor.

**b.     Reservation of Causes of Action.**  Unless any Cause of Action against a Person is expressly waived, relinquished, exculpated, released, compromised or settled in this Plan or a Final Order, and except as to the Pre-Petition Lenders, Sotera and the Reorganized Debtor specifically reserve all Causes of Action, for later adjudication.  Therefore, no preclusion doctrine, estoppel (judicial, equitable or otherwise) or laches shall apply to any of the Causes of Action upon, after or as a consequence of the confirmation, the Effective Date or consummation of this Plan.

In its Statement of Financial Affairs ("SOFA") filed on October 25, 2016, Sotera disclosed all known transfers during the ninety (90) days from the Petition Date (Category I transfers described in detail in Attachment 2.3 to SOFA), all transfers to insiders during the period one year before the Petition Date, (Category 2 described in detail in part of 2.4 of SOFA), and other transfers made during the two years before bankruptcy (Category 3 described in detail in Part 6.13 of the SOFA).

While Foley has not completed its review of all of these transfers it does appear that the vast majority of the transfers in Categories 1, 2 and 3 of the SOFA were made in the ordinary course of business or otherwise protected from being avoided or set aside.  In addition, Sotera is not aware of any claim or Cause of Action for any conduct of the Pre-Petition Lenders in the post-petition period.  Notwithstanding all of the above, Sotera reserves its right to assert any and all Causes of Action belonging to it, including Avoidance Actions.

**c.     Preservation of Defensive Use of Causes of Action.**  Whether or not any Cause of Action is pursued or abandoned, Sotera and the Reorganized Debtor reserve their rights to use any such Cause of Action defensively, including for the purposes of asserting a setoff or recoupment, or to object to all or part of any Claim pursuant to § 502(d) of the Bankruptcy Code or otherwise.  Sotera reserves its rights to use any such Assigned Cause of Action defensively, including for the purposes of asserting a setoff or recoupment, or to object to all or part of any Claim pursuant to § 502(d) of the Bankruptcy Code or otherwise.

**d.     Discretion to Pursue or Settle and Immunity of the Parties.**  The Reorganized Debtor shall have discretion to pursue or not to pursue, to settle or not to settle, to try or not to try, and/or to appeal or not to appeal all Causes of Action.

**6.17     No Liability for Solicitation or Participation**.

As specified in § 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sales, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

### ARTICLE VII
### PROVISIONS GOVERNING DISTRIBUTIONS

**7.1     Distributions.**  Subject to Bankruptcy Rule 9010, all distributions under this Plan shall be made by the Disbursing Agent pursuant to the terms and conditions contained in this Plan.

**7.2     Distributions of Cash.**  All distributions of Cash to be made by the Disbursing Agent pursuant to this Plan shall be made by a check or wire transfer from the Disbursing Agent's account maintained in accordance with this Plan.

**7.3     Effective Date Payments.**  As soon as is practicable after the Effective Date, the Disbursing Agent shall make the initial distributions (the "Initial Distribution Date") to those entitled to distribution in accordance with the terms and provisions of the Plan.

**7.4     Distributions on a Subsequent Distribution Date.**  Pursuant to the terms of provisions of the Plan, the Disbursing Agent shall, on a subsequent date in accordance with the terms and provisions of the Plan (a "Subsequent Distribution Date"), distribute such Cash or other assets to the holders of Claims or Interests entitled to distributions under the Plan that were Allowed on the Effective Date or subsequently have become Allowed Claims or Interests.

**7.5     Distributions on a Final Distribution Date.**  Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall establish a final distribution date (the "Final Distribution Date") upon which the Disbursing Agent shall distribute such Cash or other assets to the holders of Claims or Interests entitled to distributions under the Plan that were not Allowed on the Effective Date but have become Allowed Claims or Interests on or before the Final Distribution Date in accordance with the treatment of established by the Plan.

**7.6     Delivery of Distributions and Undeliverable Distributions.**  Distributions to the holder of an Allowed Claim or Interest shall be made at the address of such holder as set forth on the Schedules unless superseded by the address as set forth on the Proof of Claim filed by such holder or by a written notice to the Disbursing Agent providing actual knowledge to the Disbursing Agent of a change of address.  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified in writing within six months of the distribution date of such holder's then current address, at which time all distributions shall be made to such holder, without interest.  All claims for undeliverable distributions shall be made within six months after the date such undeliverable distribution was initially made.  If any claim for an undeliverable distribution is not timely made as provided herein, such claim shall be forever barred with prejudice.  After such date, all unclaimed property (a) shall be applied first to satisfy the costs of administering and fully consummating this Plan, then shall be transferred to the Reorganized Debtor and available to be used for general corporate purposes, including working capital, and (b) the holder of any such Claim or Interest shall not be entitled to any other or further distribution under this Plan on account of such undeliverable distribution or such Claim or Interest.

**7.7     Time Bar to Cash Payments and Disallowances.**  Checks issued by the Disbursing Agent in respect of Allowed Clams shall be void if not negotiated within six months after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check originally was issued, on or before the expiration of six months following the date of issuance of such check.  After such date, (a) all funds held on account of such void check shall be applied first to satisfy the costs of administering and fully consummating this Plan, then will be available to the Reorganized Debtor to be used for general corporate purposes, (b) the Claim of the holder of any such void check shall be disallowed, and (c) such Claimant shall not be entitled to any other or further distribution on account of such Claim.

Exhibit A

**7.8    Minimum Distributions.**  If a distribution to be made to a holder of an Allowed Claim on any Distribution Date, including the Final Distribution Date, would be $10.00 or less, notwithstanding any contrary provision of this Plan, no distribution will be made to such Claimant.

**7.9    Transactions on Business Days.**  If the Effective Date or any other date on which a transaction, event or act may occur or arise under this Plan shall occur on Saturday, Sunday or other day that is not a Business Day, the transaction, event or act contemplated by this Plan to occur on such day shall instead occur on the next day which is a Business Day.

**7.10    Distributions after Allowance.**  Distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes Allowed or estimated for distribution purposes, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which such holder belongs.

**7.11    Disputed Payments.**  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any distribution, the Disbursing Agent may, in lieu of making such distribution to such Person, make such distribution into an escrow account until the disposition thereof shall be determined by the Bankruptcy Court or by written agreement among the interested parties to such dispute.

**7.12    No Distributions in Excess of Allowed Amount of Claim.**  Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any distribution in excess of the Allowed amount of such Claim.

**ARTICLE VIII**
**PROCEDURES REGARDING DISPUTED CLAIMS**

**8.1    Objections to Claims.**

a.    The Reorganized Debtor shall have the exclusive right to object to Claims after the Effective Date including, but not limited to, objections regarding the allowance, classification or amount of Claims, subject to the procedures and limitations set forth in this Plan, the Bankruptcy Rules, and the Bankruptcy Code; provided, however, that the deadline for the Reorganized Debtor to file objections to Claims shall be one hundred eighty (180) days after the Effective Date, unless further extended by the Bankruptcy Court upon notice to all creditors and holders of equity interests requesting notice pursuant to Bankruptcy Rule 2002.  All such objections shall be litigated to a Final Order except to the extent the Reorganized Debtor, in its sole discretion, elects to withdraw any such objection or compromise, settle or otherwise resolve any such objection, in which event the Reorganized Debtor may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.

b.    Unless any objection to a Claim is expressly waived, relinquished, released, compromised or settled in this Plan or a Final Order, Sotera and the Reorganized Debtor specifically reserve all such objections, including without limitation objections to the amount or validity of any Claim, and, specifically including without limitation objections to the Claims asserted by Zoll Medical Corporation ("Zoll") (to the extent the currently proposed settlement of such Claim is not approved by this Court), Masimo, James Welch, and Tim Wollaeger. As discussed above, Sotera has not yet completed its analysis into and investigation

20

Exhibit A

of the Claims and objections thereto.  Accordingly, no preclusion doctrine, estoppel (judicial, equitable or otherwise) or laches shall apply to any objection to any Claim upon, after or as a consequence of the confirmation, the Effective Date or consummation of this Plan.

**8.2    No Distributions Pending Determination of Allowance of Disputed Claims.** No distributions shall be made under this Plan on account of any Disputed Claim, unless and until such Claim becomes an Allowed Claim.

**8.3    Reserve Accounts for Disputed Claims.**  On or prior to the Initial Distribution Date and each Subsequent Distribution Date, the Disbursing Agent shall reserve Cash in an aggregate amount sufficient to pay each holder of a Disputed Claim (a) the amount of Cash that such holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Initial Distribution Date, or (b) such lesser amount as the Bankruptcy Court may estimate or may otherwise order (the "Disputed Claims Reserve").

**8.4    Investment of Disputed Claims Reserve.**  The Disbursing Agent shall be permitted, from time to time, to invest all or a portion of the Cash in the Disputed Claims Reserve in United States Treasury Bills (or in a fund that invests substantially all of its assets in United States Treasury securities), interest-bearing certificates of deposit, tax exempt securities or investments permitted by § 345 of the Bankruptcy Code, with the concurrence of the Board of Directors or as otherwise authorized by the Bankruptcy Court, using prudent efforts to enhance the rates of interest earned on such Cash without inordinate risk.  All interest earned on such Cash shall be held in the Disputed Claims Reserve and, after satisfaction of any expenses incurred in connection with the maintenance of the Disputed Claims Reserve, including taxes payable on such interest income, if any, shall be transferred out of the Disputed Claims Reserve and shall be used by the Reorganized Debtor in accordance with this Plan.

**8.5    Allowance and Payment of Disputed Claims.**  If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall, within thirty (30) days after the date on which such Disputed Claim becomes an Allowed Claim or as soon thereafter as is practicable, distribute from the Disputed Claims Reserve to the holder of such Allowed Claim the amount of distributions that such holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Effective Date.

**8.6    Release of Excess Funds from Disputed Claims Reserve.**  If at any time or from time to time after the Effective Date, there shall be Cash in the Disputed Claims Reserve in an amount in excess of the amount which the Disbursing Agent is required at such time to reserve on account of Disputed Claims under this Plan or pursuant to any order of the Bankruptcy Court, the Disbursing Agent may release such funds from the Disputed Claims Reserve to the Reorganized Debtor.

**8.7    Estimation.**  Sotera or the Reorganized Debtor, as the case may be, may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether Sotera or the Reorganized Debtor, as the case may be, have previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a

Exhibit A

maximum limitation on such Claim, Sotera or the Reorganized Debtor, as the case may be, may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  On and after the Confirmation Date, Claims which have been estimated subsequently may be compromised, settled, withdrawn or otherwise resolved without further order of the Bankruptcy Court as provided in Section 8.1 of this Plan.

## ARTICLE IX
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1     Rejection of Executory Contracts and Unexpired Leases.**  Except as otherwise provided in the Confirmation Order, pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, all remaining Executory Contracts and Unexpired Leases that exist between Sotera and any Person shall be deemed rejected as of the Effective Date, except for any Executory Contract or Unexpired Lease (i) that has been assumed, assumed and assigned or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption, assumption and assignment or rejection has been filed (including a motion seeking an order authorizing, but not directing, Sotera to assume, assume and assign, or reject such Executory Contract or Unexpired Lease) prior to the Effective Date, or (iii) pursuant to stipulation with Sotera or the Reorganized Debtor.  Any claims arising from the rejection of an Executory Contract or Unexpired Lease ("Rejection Claims") shall be classified in Class 6 under this Plan.

**9.2     Bar Date for Filing Rejection Claims.**  A Proof of Claim asserting a Rejection Claim shall be filed with the Bankruptcy Court on or before the fortieth (40th) day after the Effective Date or be forever barred from assertion of any Rejection Claim against and payment from the Reorganized Debtor.

## ARTICLE X
## CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN

**10.1     Conditions to the Effective Date.**  The Effective Date will not occur, and the Plan will not be consummated unless and until the following conditions have been satisfied or duly waived pursuant to Section 10.2 of this Plan:

**a.**     The Confirmation Order, with the Plan and all exhibits and annexes to each, in form and substance reasonably acceptable to Sotera, shall have been entered by the Bankruptcy Court, and shall be a Final Order, and no request for revocation of the Confirmation Order under § 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending; provided, however, that if the Confirmation Order has not become a Final Order because a notice of appeal has been timely filed and the parties are not stayed or enjoined from consummating the Plan, this Section 10.1(a) shall be deemed satisfied;

**b.**     All actions, documents and agreements necessary to implement this Plan shall be in form and substance reasonably satisfactory to the Investors and Sotera and shall have been effected or executed as applicable;

**c.**     The Investors shall have executed the Exit Financing Agreement; and

22

**d.**      Sotera shall have entered into the Reorganization Term Loan.

**10.2    Waiver of Conditions.**  The conditions set forth in Section 10.1(a), (b) and (d) of this Plan may be waived by Sotera and the Investors, without any notice to any other parties-in-interest or the Bankruptcy Court and without a hearing.

**ARTICLE XI**
**EFFECT OF CONFIRMATION**

**11.1    DISCHARGE OF THE DEBTOR.**  PURSUANT TO § 1141(D) OF THE BANKRUPTCY CODE AND, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN OR IN THE CONFIRMATION ORDER, THE RIGHTS AFFORDED AND THE PAYMENTS AND DISTRIBUTIONS TO BE MADE AND THE TREATMENT UNDER THE PLAN SHALL BE IN COMPLETE EXCHANGE FOR, AND IN FULL AND UNCONDITIONAL SETTLEMENT, SATISFACTION, DISCHARGE, AND RELEASE OF ANY AND ALL EXISTING DEBTS AND CLAIMS AND TERMINATION OF ALL INTERESTS OF ANY KIND, NATURE, OR DESCRIPTION WHATSOEVER AGAINST OR IN SOTERA, THE REORGANIZED DEBTOR, THEIR PROPERTY, SOTERA'S ASSETS, OR THE ESTATE, AND SHALL EFFECT A FULL AND COMPLETE RELEASE, DISCHARGE, AND TERMINATION OF ALL LIENS, SECURITY INTERESTS, OR OTHER CLAIMS, INTERESTS, OR ENCUMBRANCES UPON ALL OF SOTERA'S ASSETS AND PROPERTY.  FURTHER, ALL PERSONS ARE PRECLUDED FROM ASSERTING, AGAINST SOTERA OR THE REORGANIZED DEBTOR OR THEIR RESPECTIVE SUCCESSORS, OR ANY PROPERTY THAT IS TO BE DISTRIBUTED UNDER THE TERMS OF THE PLAN, ANY CLAIMS, OBLIGATIONS, RIGHTS, CAUSES OF ACTION, LIABILITIES, OR INTERESTS BASED UPON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE, OTHER THAN AS EXPRESSLY PROVIDED FOR IN THE PLAN, OR THE CONFIRMATION ORDER, WHETHER OR NOT (A) A PROOF OF CLAIM BASED UPON SUCH DEBT IS FILED OR DEEMED FILED UNDER § 501 OF THE BANKRUPTCY CODE; (B) A CLAIM BASED UPON SUCH DEBT IS ALLOWED; OR (C) THE CLAIMANT BASED UPON SUCH DEBT HAS ACCEPTED THE PLAN.

**11.2    INJUNCTION.**  EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL CLAIMANTS AND HOLDERS OF INTERESTS ARISING PRIOR TO THE EFFECTIVE DATE SHALL BE PERMANENTLY BARRED AND ENJOINED FROM ASSERTING AGAINST THE REORGANIZED DEBTOR OR SOTERA, OR THEIR SUCCESSORS OR PROPERTY, OR SOTERA'S ASSETS, ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF SUCH CLAIM OR INTEREST: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING ON ACCOUNT OF SUCH CLAIM AGAINST OR INTEREST IN THE REORGANIZED DEBTOR, SOTERA, OR THE PROPERTY TO BE DISTRIBUTED UNDER THE TERMS OF THE PLAN, OTHER THAN TO ENFORCE ANY RIGHT TO DISTRIBUTION WITH RESPECT TO SUCH PROPERTY UNDER THE PLAN; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE REORGANIZED DEBTOR, SOTERA OR ANY OF THE PROPERTY TO BE DISTRIBUTED UNDER THE TERMS OF THE PLAN, OTHER THAN AS PERMITTED UNDER SUB-PARAGRAPH (I) ABOVE; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR

23

Exhibit A

ENCUMBRANCE AGAINST PROPERTY OF THE REORGANIZED DEBTOR, SOTERA, OR ANY PROPERTY TO BE DISTRIBUTED UNDER THE TERMS OF THE PLAN; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY OBLIGATION DUE SOTERA, THE REORGANIZED DEBTOR, THEIR ASSETS OR ANY OTHER PROPERTY OF SOTERA, THE REORGANIZED DEBTOR, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF, OR SUCCESSOR IN INTEREST TO, ANY OF THE FOREGOING PERSONS; AND (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THE PLAN.  THE FOREGOING DISCHARGE, RELEASE AND INJUNCTION ARE AN INTEGRAL PART OF THE PLAN AND ARE ESSENTIAL TO ITS IMPLEMENTATION.  SOTERA AND THE REORGANIZED DEBTOR SHALL HAVE THE RIGHT TO INDEPENDENTLY SEEK THE ENFORCEMENT OF THE DISCHARGE, RELEASE AND INJUNCTION SET FORTH IN THIS ARTICLE XI.

**11.3   No Waiver of Discharge.**  Except as otherwise specifically provided herein, nothing in the Plan shall be deemed to waive, limit, or restrict in any way the discharge granted to Sotera upon confirmation of the Plan by § 1141 of the Bankruptcy Code.

**11.4   Binding Effect.**  As of the Effective Date, this Plan shall be binding upon and inure to the benefit of Sotera, the Reorganized Debtor, all Claimants and holders of Interests, other parties-in-interest and their respective heirs, successors, and assigns.

**11.5   Term of Injunctions or Stays.**  Unless otherwise provided in this Plan, all injunctions or stays provided for in the Chapter 11 Case pursuant to §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date, at which time they are replaced with the injunction set forth in Section 11.1 of the Plan.

**11.6   Setoffs.**  Except with respect to Claims specifically Allowed under the Plan including, Sotera or the Reorganized Debtor, as applicable, may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that Sotera may have against such Claimant; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Sotera or the Reorganized Debtor of any such claim that Sotera or the Reorganized Debtor may have against such Claimant.

## ARTICLE XII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Case, this Plan and the Confirmation Order pursuant to, and for the purposes of, §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.   to determine the allowance or classification of Claims and to hear and determine any objections thereto;

b.   to determine any and all motions, adversary proceedings, applications, contested matters and other litigated matters under the Bankruptcy Code or arising in or related

to the Chapter 11 Case that may be pending in the Bankruptcy Court on, or initiated after, the Effective Date;

        **c.**     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

        **d.**     to issue such orders in aid of the execution, implementation and consummation of this Plan to the extent authorized by § 1142 of the Bankruptcy Code or otherwise;

        **e.**     to construe and take any action to enforce this Plan;

        **f.**     to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

        **g.**     to modify this Plan pursuant to § 1127 of the Bankruptcy Code, or to remedy any apparent non-material defect or omission in this Plan, or to reconcile any non-material inconsistency in this Plan so as to carry out its intent and purposes;

        **h.**     to hear and determine all applications for compensation and reimbursement of expenses of Professionals under §§ 328(a), 330, 331, 333, 503(b) or 1103 of the Bankruptcy Code;

        **i.**     to determine any other requests for payment of Priority Tax Claims, Priority Claims or Administrative Expense Claims;

        **j.**     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

        **k.**     to consider and act on the compromise and settlement or payment of any Claim against Sotera, the Reorganized Debtor or the Estate;

        **l.**     to recover all assets of Sotera and property of the Estate, wherever located;

        **m.**     to hear and determine Causes of Action brought by the Reorganized Debtor; provided, however, that nothing in the retention of jurisdiction under this clause (m) shall be construed as a determination that the Bankruptcy Court has or does not have jurisdiction to hear and determine any Causes of Action;

        **n.**     to determine all questions and disputes regarding title and/or ownership to the assets of Sotera, the Reorganized Debtor or the Estate;

        **o.**     to issue injunctions, enter and implement other orders or to take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of this Plan or the Confirmation Order;

        **p.**     to remedy any breach or default occurring under this Plan;

        **q.**     to resolve and finally determine all disputes that may relate to, impact on or arise in connection with this Plan;

25

Exhibit A

**r.** to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

**s.** to hear any other matter consistent with the provisions of the Bankruptcy Code; and

**t.** to enter a final decree closing the Chapter 11 Case.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

**13.1    Modification of Plan.**  Sotera may propose amendments to or modifications of this Plan under § 1127 of the Bankruptcy Code at any time prior to the entry of the Confirmation Order.  After the Confirmation Date, the Reorganized Debtor may remedy any defects or omissions or reconcile any inconsistencies in this Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of this Plan so long as the interests of Claimants are not materially and adversely affected.

**13.2    Extensions of Time.**  Notwithstanding any time limitation in this Plan, the Bankruptcy Court may, pursuant to a motion filed with the Bankruptcy Court prior to the expiration of such time limitation and for good cause shown, extend such time limitation.

**13.3    Releases and Related Matters**.

**a.    Releases by Holders of Claims for Post-Petition Conduct.**

As of the Effective Date, in consideration for the obligations of Sotera and the Reorganized Debtor under the Plan and the cash and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each holder of a Claim or Interest will be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the right to enforce obligations under or reserved by the Plan and the contracts, instruments, releases, agreements and documents delivered thereunder and the right to contest Fee Claims), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place after the Petition Date and through the Effective Date, other than for gross negligence or willful misconduct, in any way relating to Sotera, the Chapter 11 Case or the Plan that such Person has, had or may have against (i) Sotera, (ii) Sotera's directors, officers, employees, agents and attorneys, (iii) the Committee and its agents, attorneys, and other professionals; (iv) the Pre-Petition Lenders and their agents, attorneys, and other professionals; (v) the DIP Agents and DIP Lenders and their employees, agents, attorneys and other professionals and (vi) the Investors and their employees, agents, attorneys and other professionals.  Sotera, the Reorganized Debtor, the Committee, the Pre-Petition Lenders, the DIP Agents, and DIP Lenders, and each of their respective agents may reasonably rely upon the opinions of their respective counsel, accountants, and other experts, and professionals and such reliance, if reasonable, shall conclusively establish good faith and the absence of gross negligence or willful misconduct; provided, however, that a determination that such reliance is

26

unreasonable shall not, by itself, constitute a determination or finding of bad faith, gross negligence or willful misconduct.

### b.    Releases by Sotera.

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, Sotera and the Reorganized Debtor and any and all Persons claiming through or on behalf of Sotera or the Reorganized Debtor including, without limitation, the Committee, will be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities whatsoever in connection with or related to Sotera, the Chapter 11 Case or the Plan (other than the rights of Sotera or Reorganized Debtor to enforce the Plan and the contracts, instruments, releases, and other agreements or documents delivered thereunder) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to Sotera, the Reorganized Debtor, the Chapter 11 Case or the Plan, and that may be asserted by Sotera or its Estate or the Reorganized Debtor against (i) Sotera's directors, officers, employees, agents and attorneys; (ii) the DIP Agents and DIP Lenders and their employees, agents, attorneys and other professionals; (iii) the Committee and its agents, attorneys, and other professionals; (iv) the Pre-Petition Lenders and their agents, attorneys, and other professionals; and (v) the Investors and their employees, agents, attorneys and other professionals.

Foley has reviewed all pertinent facts and knows of no viable claims or Causes of Action exist as to Sotera's officers, directors, employees, agents and attorneys.  The Committee has not yet completed its investigation and has not yet reached the same conclusion as Foley.  Therefore, as to the Committee and any third party with standing, the right to assert any such claim or Cause of Action is reserved subject to the Confirmation Order.

### c.    Injunction Related to Releases.

The Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Plan, including pursuant to the releases in this Section 13.3.  FOR THE AVOIDANCE OF ANY DOUBT, THE CONFIRMATION ORDER WILL PERMANENTLY ENJOIN MASIMO FROM COMMENCING OR PROSECUTING ANY CAUSES OF ACTION AND OTHERWISE PERMANENTLY ENJOIN MASIMO FROM EXERCISING AND ENFORCING ANY AND ALL OTHER EQUITABLE RIGHTS AND REMEDIES ON ACCOUNT OF THE MASIMO CLAIMS, AND/OR ANY AND ALL CAUSES OF ACTION ARISING THEREFROM.  THE FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF CONFIRMATION OF THE PLAN PROVIDES THAT ANY AND ALL PRE- AND POST-PETITION CLAIMS AS PROVIDED BY THE PLAN, INCLUDING SECTION 13.3, AND CAUSES OF ACTION OF MASIMO AGAINST SOTERA OR THE REORGANIZED DEBTOR INCLUDING ANY AND ALL EQUITABLE RIGHTS AND REMEDIES ARISING THEREFROM (INCLUDING ANY INJUNCTIVE RELIEF) QUALIFY AND ARE TREATED AS A DISCHARGEABLE "CLAIM", AS SUCH TERM IS DEFINED IN BANKRUPTCY CODE SECTION 101(5)(A)&(B).

**13.4    Dissolution of the Committee.**  Upon payment in full of all Class 5 Claims, the Committee shall dissolve automatically, whereupon its members, Professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except with respect to applications for Fee Claims.  The Professionals retained by the Committee shall be entitled to compensation and reimbursement of (i) fees and expenses for services rendered through and including the date it is dissolved, and (ii) fees and expenses for services rendered in connection with applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date pursuant to Section 2.2 of the Plan or any objections thereto.

**13.5    Default.** In the event Sotera fails to perform a material obligation of the Plan (a "Default"), the US Trustee, the Committee, or any unpaid holder of an Allowed Claim may (i) provide Sotera written notice of the Default, and (ii) if the Default is not cured within ten (10) days after receipt of the written notice, seek conversion of the Chapter 11 Case or dismissal of the Chapter 11 Case or relief in state court as appropriate.

**13.6    Notices.**  Any pleading, notice or other documents required by the Plan or the Confirmation Order to be served on or delivered to Sotera, the Reorganized Debtor, or the Committee must be sent by overnight delivery service, facsimile transmission, courier service or messenger to:

If to Sotera, to:

Thomas Watlington
Chief Executive Officer
Sotera Wireless, Inc.
10020 Huennekins Street
San Diego, CA  92121

and

Victor A. Vilaplana, Esq.
Marshall J. Hogan, Esq.
FOLEY & LARDNER LLP
3579 Valley Centre Dr., Suite 300
San Diego, CA  92130
Fax:  (858) 792-6773
Email: vavilaplana@foley.com
        mhogan@foley.com

(Counsel to Sotera and the Reorganized Debtor)

If to the Reorganized Debtor, to:

Thomas Watlington
Chief Executive Officer
Sotera Wireless, Inc.
10020 Huennekins Street
San Diego, CA  92121

28

Exhibit A

If to the Committee, to:

    Christopher Hawkins, Esq.
    Sullivan Hill Lewin Rez & Engel
    550 West C Street, 15th Floor
    San Diego, CA  92101
    Email: Hawkins@sullivanhill.com
    Fax:  (619) 231-4372

    (Counsel to the Committee)

If to the United States Trustee, to:

    Haeji Hong, Esq.
    OFFICE OF THE U.S. TRUSTEE
    402 W. Broadway, Ste. 600
    San Diego, CA  92101
    Fax:  (619) 557-5339

    (United States Trustee)

**13.7   Captions.**  Paragraph captions used herein are for convenience only and shall not affect the construction of this Plan.

**13.8   Choice of Law.**  Except to the extent that (a) the Bankruptcy Code or other federal statutes or regulations, or (b) the California Corporation Code, are applicable, the rights and obligations arising under the Plan shall be governed by, construed, and enforced in accordance with the laws of the State of California without giving effect to the principles of conflict of laws thereof.  In the event of an inconsistency between the terms of this Plan and the laws of the State of California, the terms of this Plan shall prevail.

DATE: MARCH 10, 2017          FOLEY & LARDNER LLP


BY: /S/ VICTOR A. VILAPLANA
      VICTOR A. VILAPLANA
      ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION

# EXHIBIT A

Exhibit A

# MEMORANDUM OF TERMS
## NEW SERIES A PREFERRED STOCK FINANCING
### OF
## SOTERA WIRELESS, INC.

**Issuer:**  Sotera Wireless, Inc. (the "***Company***").

**Type of Security:**  New Series A Preferred Stock of the Company ("***New Series A Preferred***").

**Amount Raised:**  $30 million, which is equal to approximately a ninety-eight percent (98%) equity stake in the Company immediately following the Closing (as defined below), including conversion of the outstanding debtor in possession financing promissory notes (the "***DIP Notes***").

**Investors:**  Entities associated with Foxconn would invest approximately $19.81 million, including conversion of their DIP Notes; entities associated with Sanderling Ventures would invest approximately $4.81 million, including conversion of their DIP Notes; Shanghai Xiaoai Medical Technology Co., Ltd ("***Lanhai***") would invest approximately $4.34 million; Ken Buechler would invest approximately $0.54 million, including conversion of his DIP Note; and entities associated with Intermountain Health would invest $0.5 million.

**Pre-/Post-Money Valuation:**  Pre-money valuation is estimated to be approximately $1 million.[1]

Post-money valuation is estimated to be $43 million, including an equity incentive pool (including issued and unallocated options) representing 14% of the fully-diluted shares of the Company (the "***Equity Incentive Pool***").

**Price Per Share:**  The per share price shall be $0.01 (the "***New Series A Issuance Price***") which is calculated by dividing the pre-money valuation of approximately $1 million by the fully-diluted number of shares of Common Stock issued and reserved for issuance, excluding any increase to the Equity Incentive Pool.

**Conversion:**  The existing preferred stock of the Company shall (i), under a Reorganization Plan Event #1 (as defined in the Company's chapter 11 plan of reorganization ("***Plan***")), convert into the Company's common stock (the "***Common Stock***") upon completion of the chapter 11 bankruptcy proceeding of the Company (the

---

[1] The valuation as stated here is not a reorganization or liquidation valuation but does reflect the uncertainty regarding the Masimo Claims and associated litigation costs as well as the uncertainty regarding the amount, if any, of the Rejection Claims.

"***Bankruptcy***"), or (ii), under a Reorganization Plan Event #2 (as defined in the Plan), be cancelled. The existing common stock of the Company shall (i), under a Reorganization Plan Event #1, remain outstanding notwithstanding the completion of the Bankruptcy and the financing contemplated by this Memorandum of Terms, or (ii), under a Reorganization Plan Event #2, be cancelled.

**Junior Preferred Stock:** If an existing preferred shareholder of the Company purchases a percentage of the total number of shares of New Series A Preferred sold in this financing, including the shares of New Series A Preferred issued upon conversion of such shareholder's DIP Notes, equal to at least 2/3 of such shareholder's *pro rata* percentage ownership stake in the Company prior to the conversion of the existing preferred stock in connection with the Bankruptcy and the issuance of such New Series A Preferred (such *pro rata* share shall be equal to the ratio of (i) the number of shares of outstanding Common Stock and existing preferred stock of the Company held by such shareholder or its affiliates to (ii) the total number of shares of outstanding Common Stock and existing preferred stock of the Company), such shareholder shall be issued two (2.0) shares of junior preferred stock of the Company (the "***Junior Preferred***") for each share of common stock and preferred stock it formerly held in the Company. The New Series A Preferred and Junior Preferred may sometimes be collectively referred to herein as the "***Preferred Stock***".

The original issue price of the Junior Preferred shall be $0.01 per share (the "***Junior Preferred Issuance Price***")

**Anticipated Closing:** The New Series A Preferred financing shall close upon, or as soon as practicable following, the end of the Bankruptcy (the "***Closing***"), which shall occur when (i) the secured and unsecured creditors of the Company have accepted a repayment plan; (ii) the Company's restructuring plan has been submitted to and approved by the Bankruptcy court; (iii) the Bankruptcy court is satisfied that sufficient capital is committed such that the Company will not seek further bankruptcy protection (with an expectation of up to approximately a $20 million debt financing by institutional lenders would satisfy the court); (iv) the Masimo litigation shall have been settled or otherwise resolved; and (v) such other terms and conditions as may be specified by the Bankruptcy court (collectively, the "***Bankruptcy Court Conditions***").

**Warrant Coverage:** Upon the Closing, each debtor in possession lender to the Company (a "***DIP Lender***") shall receive a warrant (the "***Warrants***") exercisable for that number of shares of New Series A Preferred

equal to 25% of the aggregate amount invested by such DIP Lender in the New Series A Preferred, including conversion of the applicable DIP Note, divided by the New Series A Issuance Price. The exercise price of the Warrants will be equal to $0.01 per share. Each Warrant shall have a five year term.

**Dividends:**

Dividends must first be paid on the New Series A Preferred before any dividends are paid on the Junior Preferred or the Common Stock. Non-cumulative dividends, when and if declared by the Company's Board of Directors, will be paid on the New Series A Preferred in an amount equal to $0.0008 per share.

**Liquidation Preference:**

In the event of any liquidation, dissolution or winding up of the Company, the holders of New Series A Preferred will be entitled to receive, before any distribution or payment shall be made to holders of Junior Preferred or Common Stock, an amount equal to one times the New Series A Issuance Price (i.e., $0.01) plus any declared and unpaid dividends on each share of New Series A Preferred. Following the payment to the New Series A Preferred described above, the holders of Junior Preferred will be entitled to receive, before any distribution of payment shall be made to holders of Common Stock, an amount equal to one times the Junior Preferred Issuance Price (i.e., $0.01).

After the holders of the New Series A Preferred and Junior Preferred have received an aggregate amount equal to their respective liquidation preference caps, the remaining assets of the Company legally available for distribution shall be distributed ratably to the holders of the Common Stock.

There shall be no participation rights (i.e., the holders of the New Series A Preferred and Junior Preferred will have a choice of receiving their liquidation preference or converting to Common Stock).

**Conversion:**

The New Series A Preferred and Junior Preferred will be convertible into Common Stock at any time at option of the holder. In addition, the New Series A Preferred and Junior Preferred will automatically convert into Common Stock (i) upon the closing of a firm commitment underwritten initial public offering of Common Stock for a total offering size of not less than $40 million (a "**Qualified IPO**"), or (ii) at the election of holders of 66 2/3% of the outstanding shares of New Series A Preferred.

Each share of New Series A Preferred and Junior Preferred will convert into shares of Common Stock on a one-to-one basis, or at the conversion price as last adjusted in accordance with the anti-dilution provisions described below.

Exhibit A

| | |
|---|---|
| **Anti-dilution Provisions:** | The conversion price and conversion rate of the New Series A Preferred will be subject to antidilution protection pursuant to a full-ratchet adjustment such that the conversion price will be reduced to the price at which new shares are issued, subject to customary exceptions. |
| **Redemption:** | The New Series A Preferred and the Junior Preferred will not be redeemable. |
| **Voting Rights:** | The New Series A Preferred and Junior Preferred will vote on an as-converted basis together with the Common Stock on all matters other than as required by law and as set forth below. |
| **Protective Provisions:** | <u>New Series A Preferred</u>: Consent of the holders of 66 2/3% of the New Series A Preferred, voting together as a single class, will be required to (i) amend the Company's Certificate of Incorporation or Bylaws so as to adversely alter the rights, preferences, privileges of the New Series A Preferred, (ii) create any new class of shares with rights senior or pari passu with the existing New Series A Preferred, (iii) enter into a merger, consolidation, or sale of all or substantially all of the assets of the Company, (iv) authorize additional shares of Common Stock or Preferred Stock, (v) pay or declare any dividend on Common Stock or other junior securities, or (vi) redeem, purchase or otherwise acquire any share or shares of Preferred Stock or Common Stock (other than (a) the repurchase of shares of Common Stock pursuant to a written benefit plan or employment or consulting agreement, or (b) the repurchase of shares of any equity securities in connection with the Company's right of first offer with respect to those securities contained in any written agreement with the Company). |
| | <u>Junior Preferred</u>: Consent of the holders of 66 2/3% of the Junior Preferred, voting together as a single class, will be required to amend any provision of the Company's Certificate of Incorporation that adversely affects the rights, preferences and privileges of the Junior Preferred in a manner different than any other outstanding series of Preferred Stock. |
| **Preemptive Rights:** | Each holder of the New Series A Preferred will have a preemptive right to purchase its *pro rata* portion of additional securities proposed to be sold by the Company based upon its ownership of Preferred Stock (other than shares issued pursuant to acquisitions, equipment lease or secured debt financings, pursuant to equity incentive plans, and other customary exclusions).  In addition, should any Investor choose not to purchase its full pro rata share, the remaining Investors shall have the right to purchase the remaining pro rata shares.  These rights will terminate upon a |

4
Exhibit A

Qualified IPO, acquisition or a sale, lease or other disposition of all or substantially all of the assets of the Company or a license of all or substantially all of the intellectual property of the Company in all or substantially all fields of use (an "***Asset Transfer***").

**Information Rights:**     So long as an Investor (together with its affiliates) continues to hold at least $2 million of shares of New Series A Preferred, the Company will deliver to the Investor quarterly and annual financial statements and annual budget, and any other information that the Investor may reasonably request.  The annual statements will be audited by an independent accounting firm.   These rights will terminate upon a Qualified IPO, acquisition or Asset Transfer.

**Registration Rights:**     Customary demand, piggyback and S-3 registration rights.  These rights will terminate upon the earlier of (i) the date that is five years after the closing of the Company's first firm commitment underwritten public offering and (ii) the closing of an acquisition or Asset Transfer.

**Board of Directors:**     The Company's Board of Directors initially will consist of five board members.

One "***Common Director***": Holders of Common Stock, voting as a separate class, shall be entitled to elect one member to the Company's Board of Directors who shall be the person then serving as the Chief Executive Officer of the Company, which individual shall initially be Tom Watlington.

Four "***New Series A Preferred Directors***": Holders of New Series A Preferred, voting as a separate class, shall be entitled to elect up to four members to the Company's Board of Directors as follows: (i) an individual designated by Sanderling, so long as Sanderling or its affiliates continue to hold shares of New Series A Preferred, (ii) two individuals designated by Foxconn, so long as Foxconn or its affiliates continue to hold shares of New Series A Preferred, one of which individuals shall initially be Leonard Wu, and (iii) one individual designated by Lanhai, so long as Lanhai or its affiliates continue to hold shares of New Series A Preferred.

**Conditions to Closing:**     In addition to the Bankruptcy Court Conditions, customary conditions to Closing will apply, which shall include, among other things, satisfactory completion of financial and legal due diligence, qualification of the shares under applicable Blue Sky laws, the filing of a Certificate of Incorporation establishing the rights and preferences of the Preferred Stock and an opinion of counsel to the Company.

Exhibit A

| **Preferred Stock Financing Documents:** | The issuance by the Company of the New Series A Preferred to the Investors will be made pursuant to preferred stock financing documents and ancillary documents referenced therein acceptable to the Bankruptcy court, the Company and the Investors, including a stock purchase agreement reasonably acceptable to the Company and the Investors which shall contain, among other things, customary representations, warranties and covenants of the Company. |
|---|---|
| **Future Right to Purchase:** | Concurrently with the first private equity financing of the Company that is completed within five years following the Closing (or, if an initial public offering, acquisition or Asset Transfer of the Company is completed prior to any such private equity financing of the Company, then immediately prior to such initial public offering, acquisition or Asset Transfer), entities associated with Sanderling Ventures would have the right, but not the obligation, to purchase $5 million of additional New Series A Preferred. |

In addition, concurrently with the first private equity financing of the Company that is completed within five years following the Closing (or, if an initial public offering, acquisition or Asset Transfer of the Company is completed prior to any such private equity financing of the Company, then immediately prior to such initial public offering, acquisition or Asset Transfer), each existing preferred shareholder of the Company, other than entities associated with Foxconn, entities associated with Sanderling Ventures, and Ken Buechler, would have the right, but not the obligation, to purchase its *pro rata* share of $5 million of additional New Series A Preferred (such *pro rata* share shall be equal to the ratio of (a) the number of shares of outstanding Common Stock and existing preferred stock of the Company currently held by such existing preferred shareholder to (b) the total number of shares of outstanding Common Stock and existing preferred stock of the Company currently held by all existing preferred shareholders of the Company other than those investing at the Closing). Existing preferred shareholders that subscribe for their *pro rata* share of the $5 million of additional New Series A Preferred shall be given a *pro rata* right of oversubscription for any unsubscribed portion of the $5 million amount.

The New Series A Preferred issued pursuant to the two preceding paragraphs would have the same rights, preferences and privileges as the New Series A Preferred issued at the Closing. In addition, an existing preferred shareholder that purchases at least 2/3 of its *pro rata* share of $5 million of additional New Series A Preferred

6
Exhibit A

Exhibit A

pursuant to the immediately preceding paragraph would be issued two (2.0) shares of Junior Preferred for each share of common stock and preferred stock it formerly held in the Company.