Exhibit 2

# EXHIBIT 2

Exhibit 2

A0797903

C 2287969

**AMENDED AND RESTATED
ARTICLES OF INCORPORATION
OF SOTERA WIRELESS, INC.**

**FILED** ᴹᵂᴹ
**Secretary of State
State of California**
ICC **MAY 16 2017** ℬ

Thomas Watlington hereby certifies that:

**ONE**: He is the duly elected and acting President and Secretary of SOTERA WIRELESS, INC., a California corporation.

**TWO**: The original name of this corporation was Triage Data Networks, Inc. and the date of filing of the original Articles of Incorporation of this corporation with the Secretary of State of California was March 13, 2002.

**THREE**: The Articles of Incorporation of this corporation are hereby amended and restated to read as follows:

**I.**

The name of the corporation is SOTERA WIRELESS, INC. (the *"Company"*).

**II.**

The purpose of the Company is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

**A.** The Company is authorized to issue two classes of stock to be designated, respectively, "Common Stock" and "Preferred Stock." The total number of shares which the Company is authorized to issue is 11,600,000,000 shares, 6,150,000,000 shares of which shall be Common Stock (the *"Common Stock"*) and 5,450,000,000 shares of which shall be Preferred Stock (the *"Preferred Stock"*). The Common Stock shall have no par value per share and the Preferred Stock shall have no par value per share.

**B.** 5,300,000,000 of the authorized shares of Preferred Stock are hereby designated "Series A Preferred Stock" (the *"Series A Preferred"*). 150,000,000 of the authorized shares of Preferred Stock are hereby designated "Junior Preferred Stock" (the *"Junior Preferred"*). The Series A Preferred and the Junior Preferred are collectively referred to herein as the *"Series Preferred."*

**C.** Effective immediately upon the filing of these Amended and Restated Articles of Incorporation (the *"Automatic Conversion Time"*), each share of the Series D Preferred Stock, Series D-1 Preferred Stock and Series E Preferred Stock issued and outstanding immediately prior to the Automatic Conversion Time shall, automatically and without any action on the part of the holder thereof, be converted into one share of Common Stock, and all rights of such holder as a holder of such shares of Series D Preferred Stock, Series D-1 Preferred Stock and Series E Preferred Stock shall immediately upon such conversion cease and terminate with respect to the

1.

144073067 v7

Exhibit 2                                                                                      000007

# A0797903

shares so converted (including without limitation any rights to accrued but unpaid dividends). All certificates representing shares of Series D Preferred Stock, Series D-1 Preferred Stock and Series E Preferred Stock outstanding as of the Automatic Conversion Time shall immediately after the Automatic Conversion Time represent a number of shares of Common Stock as provided in this paragraph, and all rights of the holder of such shares as a holder of Series D Preferred Stock, Series D-1 Preferred Stock and Series E Preferred Stock shall immediately upon such conversion cease and terminate with respect to the shares so converted. Notwithstanding the foregoing, any holder of Series D Preferred Stock, Series D-1 Preferred Stock and Series E Preferred Stock as of the Automatic Conversion Time may (but shall not be required to) after the Automatic Conversion Time surrender his, her or its stock certificate or certificates formerly representing Series D Preferred Stock, Series D-1 Preferred Stock and Series E Preferred Stock, as the case may be, to the Company, and upon such surrender the Company will issue a certificate for the correct number of shares of Common Stock to which such holder is entitled as provided in this paragraph.

**D.** Effective immediately upon the Automatic Conversion Time, each share of the Common Stock, Series A Preferred Stock, Series B Preferred Stock and Series C Preferred Stock issued and outstanding immediately prior to the Automatic Conversion Time shall automatically and without any action on the part of the holder thereof be cancelled, and all rights of such holder as a holder of such shares of Common Stock, Series A Preferred Stock, Series B Preferred Stock and Series C Preferred Stock shall immediately upon such cancellation cease and terminate with respect to the shares so cancelled (including without limitation any rights to accrued but unpaid dividends). Notwithstanding the foregoing, any holder of Common Stock, Series A Preferred, Series B Preferred Stock, Series C Preferred Stock as of the Automatic Conversion Time may (but shall not be required to) after the Automatic Conversion Time surrender his, her or its stock certificate or certificates formerly representing Common Stock, Series A Preferred, Series B Preferred Stock and Series C Preferred Stock, as the case may be, to the Company, but the failure to surrender such stock certificate or certificates shall not limit or alter the effectiveness of the cancellation of the Common Stock, Series A Preferred, Series B Preferred Stock and Series C Preferred Stock described herein.

**E.** The Company is prohibited from issuing nonvoting equity securities pursuant to Section 1123(a)(6) of Title 11 of the United States Code, as amended.

**F.** The rights, preferences, privileges, restrictions and other matters relating to the Series Preferred are as follows:

**1.     Dividend Rights.**

**a.** Holders of Series A Preferred, in preference to the holders of any other stock of the Company, shall be entitled to receive, when and as declared by the Board of Directors of the Company (the *"Board"*), but only out of funds that are legally available therefor, cash dividends at the rate of eight percent of the applicable Original Issue Price (as defined below) per annum on each outstanding share of Series A Preferred (as adjusted for any stock dividends, combinations, splits, recapitalizations and the like with respect to such shares). Such dividends shall be payable only when, as and if declared by the Board and shall be non-cumulative. The *"Original Issue Price"* of the Series Preferred shall be $0.01 for the Series A Preferred and $0.01 for the Junior Preferred.

2.

144073067 v7

Exhibit 2                                                                                                          000008

· A0797903

b.    So long as any shares of Series A Preferred shall be outstanding, no dividend, whether in cash or property, shall be paid or declared, nor shall any other distribution be made, on any class or series of capital stock, nor shall any shares of any class or series of capital stock of the Company be purchased, redeemed, or otherwise acquired for value by the Company, until all dividends on the classes or series of Series A Preferred set forth in Section 1(a) above that are senior to the classes or series of capital stock of the Company on which the dividend, distribution or purchase, redemption or other acquisition for value is proposed, shall have been paid or declared and set apart. In the event dividends are paid on any share of Junior Preferred or Common Stock after dividends have been fully paid in accordance with the dividend priority set forth in Section 1(a) above, an additional dividend shall be paid with respect to all outstanding shares of Series A Preferred in an amount equal per share (on an as-if-converted to Common Stock basis) to the amount paid or set aside for each share of Junior Preferred or Common Stock.

c.    The provisions of Section 1(b) shall not apply to (i) a dividend payable in Common Stock, (ii) the acquisition of shares of any Common Stock in exchange for shares of any other Common Stock or (iii) a Permitted Acquisition (as defined below). A *"Permitted Acquisition"* shall mean (x) an acquisition of Common Stock by the Company pursuant to a written agreement which permits the Company to repurchase such shares upon termination of services to the Company or in exercise of the Company's right of first refusal upon a proposed transfer or (y) the repurchase of any outstanding securities of the Company that is approved by the Board and the holders of a majority of the outstanding Series A Preferred, voting as a separate series. The holders of the Series A Preferred and the Junior Preferred expressly waive their rights, if any, as described in the California Corporations Code as they relate to Permitted Acquisitions involving distributions on shares junior to the Series A Preferred or the Junior Preferred, respectively.

## 2.    Voting Rights.

a.    **General Rights.** Except as otherwise provided herein or as required by law, the Series Preferred shall be voted equally with the shares of the Common Stock of the Company and not as a separate class, at any annual or special meeting of shareholders of the Company, and may act by written consent in the same manner as the Common Stock, in either case upon the following basis: each holder of shares of Series Preferred shall be entitled to such number of votes as shall be equal to the whole number of shares of Common Stock into which such holder's aggregate number of shares of Series Preferred are convertible (pursuant to Section 4 hereof) immediately after the close of business on the record date fixed for such meeting or the effective date of such written consent.

b.    **Separate Vote of Series A Preferred.** So long as any shares of Series A Preferred remain outstanding, in addition to any other vote or consent required herein or by law, the vote or written consent of the holders of a majority of the outstanding Series A Preferred, voting as a separate series, shall be necessary for effecting or validating the following actions (whether taken by amendment, merger, recapitalization, consolidation or otherwise):

(i)    Any increase or decrease in the authorized number of shares of Common Stock or Preferred Stock;

3.

144073067 v7

Exhibit 2                    000009

# A0797903

(ii)     Any authorization or any designation, whether by reclassification or otherwise, of any new class or series of stock or any other securities convertible into equity securities of the Company having rights on a parity with or senior to the Series A Preferred;

(iii)    Any redemption, repurchase, payment of dividends or other distribution with respect to Common Stock or Junior Preferred (except for a Permitted Acquisition);

(iv)    Any agreement by the Company or its shareholders regarding an Asset Transfer or Acquisition (each as defined in Section 3(e));

(v)     Any amendment, alteration, or repeal of any provision of the Articles of Incorporation or the Bylaws of the Company (including any filing of a Certificate of Designation) that adversely alters the rights, preferences and privileges of the Series A Preferred; or

(vi)    Any change in the number of directors on the Board.

c.     **Separate Vote of Junior Preferred.** So long as any shares of Junior Preferred remain outstanding, in addition to any other vote or consent required herein or by law, the vote or written consent of the holders of a majority of the outstanding Junior Preferred, voting as a separate series, shall be necessary for any amendment, alteration or repeal of any provision of the Articles of Incorporation or Bylaws of the Company (including any filing of a Certificate of Designation), that adversely affects the rights, preferences and privileges of the Junior Preferred in a manner different than any other outstanding series of Preferred Stock.

d.     **Election of Board.** The holders of Series A Preferred, voting as a separate class, shall be entitled to elect six members of the Board (the *"Series A Directors"*) at each meeting or pursuant to each consent of the Company's shareholders for the election of directors, and to remove from office such directors and to fill any vacancy caused by the resignation, death or removal of such directors.   The holders of Common Stock, voting as a separate class, shall be entitled to elect one member of the Board at each meeting or pursuant to each consent of the Company's shareholders for the election of directors, and to remove from office such director and to fill any vacancy caused by the resignation, death or removal of such director.

4.

144073067 v7

Exhibit 2                                                                000010

, A0797903

### 3.     Liquidation Rights.

a.     Upon any liquidation, dissolution, or winding up of the Company, whether voluntary or involuntary, and before any distribution or payment shall be made to the holders of any Junior Preferred or Common Stock, the holders of Series A Preferred shall be entitled to be paid out of the assets of the Company an amount per share of Series A Preferred equal to the applicable Original Issue Price (as adjusted for any stock dividends, combinations, splits, recapitalizations and the like with respect to such shares) plus all declared and unpaid dividends on such share of Series A Preferred for each share of Series A Preferred held by them. If, upon any such liquidation, dissolution or winding up, the assets of the Company (or the consideration received in such transaction) shall be insufficient to make payment in full to all holders of Series A Preferred of the liquidation preference set forth in this Section 3(a), then such assets (or consideration) shall be distributed among the holders of Series A Preferred at the time outstanding, ratably in proportion to the full amounts to which they would otherwise be respectively entitled.

b.     After the payment of the full liquidation preference of the Series A Preferred as set forth in Section 3(a) above, and before any distribution or payment shall be made to the holders of any Common Stock, the holders of Junior Preferred shall be entitled to be paid out of the assets of the Company an amount per share of Junior Preferred equal to the applicable Original Issue Price (as adjusted for any stock dividends, combinations, splits, recapitalizations and the like with respect to such shares) plus all declared and unpaid dividends on such share of Junior Preferred for each share of Junior Preferred held by them. If, upon any such liquidation, dissolution or winding up, the assets of the Company (or the consideration received in such transaction), after the payment of the full liquidation preference of the Series A Preferred as set forth in Section 3(a) above, shall be insufficient to make payment in full to all holders of Junior Preferred of the liquidation preference set forth in this Section 3(b), then such assets (or consideration) shall be distributed among the holders of Junior Preferred at the time outstanding, ratably in proportion to the full amounts to which they would otherwise be respectively entitled.

c.     After the payment of the full liquidation preference of the Series A Preferred and Junior Preferred as set forth in Sections 3(a) and 3(b) above, the remaining assets of the Company legally available for distribution (or the consideration received in such transaction), if any, shall be distributed ratably to the holders of the Common Stock.

d.     Notwithstanding anything to the contrary contained in Sections 3(a) and 3(b) above, for purposes of determining the amount each holder of shares of Series Preferred is entitled to receive with respect to any liquidation under Sections 3(a) and 3(b), each such holder of shares of a series of Series Preferred shall be deemed to have converted (regardless of whether such holder actually converted) such holder's shares of such series into shares of Common Stock immediately prior to any such liquidation if, as a result of an actual conversion, such holder would receive, in the aggregate, an amount greater than the amount that would be distributed to such holder in respect of such shares of such series of Series Preferred if such holder did not convert such shares of such series of Series Preferred into shares of Common Stock.

5.

144073067 v7

Exhibit 2                                                                      000011

# A0797903

e.        Unless the holders of a majority of the outstanding Series A Preferred, voting as a separate series, elect otherwise, the following events shall be considered a liquidation under Sections 3(a) and 3(b):

(i)        any consolidation or merger of the Company with or into any other corporation or other entity or person, or any other corporate reorganization, in which the shareholders of the Company immediately prior to such consolidation, merger or reorganization, own less than 50% of the voting power of the surviving entity immediately after such consolidation, merger or reorganization, or any transaction or series of related transactions  in which in excess of 50% of the Company's voting power is transferred, but excluding (x) any transaction effected exclusively to change the domicile of the Company, or (y) any transaction effected principally for bona fide equity financing purposes in which cash is received by the Company or indebtedness of the Company is cancelled or converted or a combination thereof (an *"Acquisition"*); or

(ii)        a sale, lease or other disposition of all or substantially all of the assets of the Company or a license of all or substantially all of the intellectual property of the Company in all or substantially all fields of use (an *"Asset Transfer"*).

4.        **Conversion Rights.**

The holders of the Series Preferred shall have the following rights with respect to the conversion of the Series Preferred into shares of Common Stock (the *"Conversion Rights"*):

a.        **Optional Conversion.**  Subject to and in compliance with the provisions of this Section 4, any shares of Series Preferred may, at the option of the holder, be converted at any time into fully-paid and nonassessable shares of Common Stock. The number of shares of Common Stock to which a holder of Series Preferred shall be entitled upon conversion shall be the product obtained by multiplying the applicable Series Preferred Conversion Rate then in effect (determined as provided in Section 4(b)) by the number of shares of Series Preferred being converted.

b.        **Series Preferred Conversion Rate.**  The conversion rate in effect at any time for conversion of each series of Series Preferred (the *"Series Preferred Conversion Rate"*) shall be the quotient obtained by dividing the applicable Original Issue Price of such series of Series Preferred by the applicable Series Preferred Conversion Price (determined as provided in Section 4(c)), then in effect for such series of Series Preferred being converted.

c.        **Series Preferred Conversion Price.**  The initial conversion price for each series of Series Preferred shall be the applicable Original Issue Price of each series of Series Preferred (the *"Series Preferred Conversion Price"*).  Such initial Series Preferred Conversion Price for each series of Series Preferred shall be subject to adjustment from time to time in accordance with this Section 4.  All references to the Series Preferred Conversion Price herein shall mean the Series Preferred Conversion Price as so adjusted.  The Series Preferred Conversion Price of the Series A Preferred is sometimes hereinafter referred to as the *"Series A Preferred Conversion Price."*

6.

144073067 v7

Exhibit 2                                                                                                    000012

A0797903

**d. Mechanics of Conversion.** Each holder of Series Preferred who desires to convert the same into shares of Common Stock pursuant to this Section 4 shall surrender the certificate or certificates therefor, duly endorsed, at the office of the Company or any transfer agent for the Series Preferred, and shall give written notice to the Company at such office that such holder elects to convert the same. Such notice shall state the number of shares of Series Preferred being converted. Thereupon, the Company shall promptly issue and deliver at such office to such holder a certificate or certificates for the number of shares of Common Stock to which such holder is entitled and shall promptly pay (i) in cash or, to the extent sufficient funds are not then legally available therefor, in Common Stock (at the Common Stock's fair market value determined by the Board as of the date of such conversion), any declared and unpaid dividends on the shares of Series Preferred being converted and (ii) in cash (at the Common Stock's fair market value determined by the Board as of the date of conversion) the value of any fractional share of Common Stock otherwise issuable to any holder of Series Preferred. Such conversion shall be deemed to have been made at the close of business on the date of such surrender of the certificates representing the shares of Series Preferred to be converted, and the person entitled to receive the shares of Common Stock issuable upon such conversion shall be treated for all purposes as the record holder of such shares of Common Stock on such date.

**e. Adjustment for Stock Splits and Combinations.** If the Company shall at any time or from time to time after the date that these Amended and Restated Articles of Incorporation are accepted for filing by the Secretary of State of the State of California (the *"Filing Date"*) effect a subdivision of the outstanding Common Stock without a corresponding subdivision of the Series Preferred, the Series Preferred Conversion Price in effect for each series of Series Preferred not so subdivided immediately before that subdivision shall be proportionately decreased. Conversely, if the Company shall at any time or from time to time after the Filing Date combine the outstanding shares of Common Stock into a smaller number of shares without a corresponding combination of the Series Preferred, the Series Preferred Conversion Price in effect for each series of Series Preferred not so combined immediately before the combination shall be proportionately increased. Any adjustment under this Section 4(e) shall become effective at the close of business on the date the subdivision or combination becomes effective.

**f. Adjustment for Common Stock Dividends and Distributions.** If the Company at any time or from time to time after the Filing Date makes, or fixes a record date for the determination of holders of Common Stock entitled to receive, a dividend or other distribution payable in additional shares of Common Stock, in each such event each Series Preferred Conversion Price that is then in effect shall be decreased as of the time of such issuance or, in the event such record date is fixed, as of the close of business on such record date, by multiplying each Series Preferred Conversion Price then in effect by a fraction, the numerator of which is the total number of shares of Common Stock issued and outstanding immediately prior to the time of such issuance or the close of business on such record date, and the denominator of which is the total number of shares of Common Stock issued and outstanding immediately prior to the time of such issuance or the close of business on such record date plus the number of shares of Common Stock issuable in payment of such dividend or distribution; provided, however, that if such record date is fixed and such dividend is not fully paid or if such distribution is not fully made on the date fixed therefor, each Series Preferred Conversion Price shall be recomputed accordingly as of the close of business on such record date and thereafter the applicable Series Preferred

7.

144073067 v7

Exhibit 2                                                                                                          000013

Exhibit 2

# A0797903

Conversion Price shall be adjusted pursuant to this Section 4(f) to reflect the actual payment of such dividend or distribution.

        **g.**    **Adjustments for Other Dividends and Distributions.** If the Company at any time or from time to time after the Filing Date makes, or fixes a record date for the determination of holders of Common Stock entitled to receive, a dividend or other distribution payable in securities of the Company other than shares of Common Stock, in each such event provision shall be made so that the holders of the Series Preferred shall receive upon conversion thereof, in addition to the number of shares of Common Stock receivable thereupon, the amount of other securities of the Company which they would have received had their Series Preferred been converted into Common Stock on the date of such event and had they thereafter, during the period from the date of such event to and including the conversion date, retained such securities receivable by them as aforesaid during such period, subject to all other adjustments called for during such period under this Section 4 with respect to the rights of the holders of the Series Preferred or with respect to such other securities by their terms; provided that any such dividend or distribution receivable upon such conversion must comply with the applicable provisions of Section 500 et seq. of the California Corporations Code at the time of such conversion.

        **h.**    **Adjustment for Reclassification, Exchange and Substitution.** If at any time or from time to time after the Filing Date, the Common Stock issuable upon the conversion of the Series Preferred is changed into the same or a different number of shares of any class or classes of stock, whether by recapitalization, reclassification or otherwise (other than an Acquisition or Asset Transfer as defined in Section 3(e) or a subdivision or combination of shares or stock dividend or a reorganization, merger, consolidation or sale of assets provided for elsewhere in this Section 4), in any such event each holder of Series Preferred shall have the right thereafter to convert such stock into the kind and amount of stock and other securities and property receivable upon such recapitalization, reclassification or other change by holders of the maximum number of shares of Common Stock into which such shares of Series Preferred could have been converted immediately prior to such recapitalization, reclassification or change, all subject to further adjustment as provided herein or with respect to such other securities or property by the terms thereof.

        **i.**    **Reorganizations, Mergers or Consolidations.** If at any time or from time to time after the Filing Date, there is a capital reorganization of the Common Stock or the merger or consolidation of the Company with or into another corporation or another entity or person (other than an Acquisition or Asset Transfer as defined in Section 3(e) or a subdivision, combination, recapitalization or reclassification, exchange or substitution of shares or other change provided for elsewhere in this Section 4), as a part of such capital reorganization, provision shall be made so that each holder of the Series Preferred shall thereafter be entitled to receive upon conversion of the Series Preferred held by such holder the number of shares of stock or other securities or property of the Company to which such holder would have been entitled on such capital reorganization had such holder's shares of Series Preferred been converted to Common Stock immediately prior to such capital reorganization, subject to adjustment in respect of such stock or securities by the terms thereof. In any such case, appropriate adjustment shall be made in the application of the provisions of this Section 4 with respect to the rights of the holders of Series Preferred after the capital reorganization to the end that the provisions of this Section 4 (including adjustment of the applicable Series Preferred Conversion Price then in effect and the number of

8.

144073067 v7

Exhibit 2      000014

# A0797903

shares issuable upon conversion of the Series Preferred) shall be applicable after that event and be as nearly equivalent as practicable.

### j.   Sale of Shares Below Series A Preferred Conversion Price.

(i)   If at any time or from time to time after the Filing Date, the Company issues or sells, or is deemed by the express provisions of this subsection (j) to have issued or sold, Additional Shares of Common Stock (as defined in subsection (j)(iv) below), other than as a dividend or other distribution on shares of Common Stock as provided in Section 4(f) above, and other than a subdivision or combination of shares of Common Stock as provided in Section 4(e) above, for an Effective Price (as defined in subsection (j)(iv) below) less than the then effective Series A Preferred Conversion Price, then and in each such case the then effective Series A Preferred Conversion Price shall be reduced, as of the opening of business on the date of such issue or sale, to a price equal to such Effective Price.

(ii)   For the purpose of making any adjustment required under this Section 4(j), the consideration received by the Company for any issue or sale of securities shall (A) to the extent it consists of cash, be computed at the net amount of cash received by the Company after deduction of any underwriting or similar commissions, compensation or concessions paid or allowed by the Company in connection with such issue or sale but without deduction of any expenses payable by the Company, (B) to the extent it consists of property other than cash, be computed at the fair value of that property as determined by the Board and (C) if Additional Shares of Common Stock, Convertible Securities (as defined in subsection (j)(iii) below) or rights or options to purchase either Additional Shares of Common Stock or Convertible Securities are issued or sold together with other stock or securities or other assets of the Company for a consideration which covers both, be computed as the portion of the consideration so received that may be determined by the Board to be allocable to such Additional Shares of Common Stock, Convertible Securities or rights or options.

(iii)   For the purpose of the adjustment required under this Section 4(j), if the Company issues or sells any rights or options for the purchase of, or stock or other securities convertible into, Additional Shares of Common Stock (such convertible stock or securities being herein referred to as *"Convertible Securities"*) and if the Effective Price of such Additional Shares of Common Stock is less than the Series A Preferred Conversion Price, in each case the Company shall be deemed to have issued at the time of the issuance of such rights or options or Convertible Securities the maximum number of Additional Shares of Common Stock issuable upon exercise or conversion thereof and to have received as consideration for the issuance of such shares an amount equal to the total amount of the consideration, if any, received by the Company for the issuance of such rights or options or Convertible Securities, plus, in the case of such rights or options, the minimum amounts of consideration, if any, payable to the Company upon the exercise of such rights or options, plus, in the case of Convertible Securities, the minimum amounts of consideration, if any, payable to the Company (other than by cancellation of liabilities or obligations evidenced by such Convertible Securities) upon the conversion thereof; provided that if in the case of Convertible Securities the minimum amounts of such consideration cannot be ascertained, but are a function of antidilution or similar protective clauses, the Company shall be deemed to have received the minimum amounts of consideration without reference to such clauses; provided further that if the minimum amount of consideration payable to the Company upon the

9.

Exhibit 2                                                                                          000015

# A0797903

exercise or conversion of rights, options or Convertible Securities is reduced over time or on the occurrence or non-occurrence of specified events other than by reason of antidilution adjustments, the Effective Price shall be recalculated using the figure to which such minimum amount of consideration is reduced; provided further that if the minimum amount of consideration payable to the Company upon the exercise or conversion of such rights, options or Convertible Securities is subsequently increased, the Effective Price shall be again recalculated using the increased minimum amount of consideration payable to the Company upon the exercise or conversion of such rights, options or Convertible Securities. No further adjustment of the Series A Preferred Conversion Price, as adjusted upon the issuance of such rights, options or Convertible Securities, shall be made as a result of the actual issuance of Additional Shares of Common Stock on the exercise of any such rights or options or the conversion of any such Convertible Securities. If any such rights or options or the conversion privilege represented by any such Convertible Securities shall expire without having been exercised, the Series A Preferred Conversion Price, as adjusted upon the issuance of such rights, options or Convertible Securities, shall be readjusted to the Series A Preferred Conversion Price which would have been in effect had an adjustment been made on the basis that the only Additional Shares of Common Stock so issued were the Additional Shares of Common Stock, if any, actually issued or sold on the exercise of such rights or options or rights of conversion of such Convertible Securities, and such Additional Shares of Common Stock, if any, were issued or sold for the consideration actually received by the Company upon such exercise, plus the consideration, if any, received by the Company for the granting of all such rights or options, whether or not exercised, plus the consideration received for issuing or selling the Convertible Securities actually converted, plus the consideration, if any, actually received by the Company (other than by cancellation of liabilities or obligations evidenced by such Convertible Securities) on the conversion of such Convertible Securities, provided that such readjustment shall not apply to prior conversions of Series Preferred.

(iv)    *"Additional Shares of Common Stock"* shall mean all shares of Common Stock issued by the Company or deemed to be issued pursuant to this Section 4(j), whether or not subsequently reacquired or retired by the Company other than (1) shares of Common Stock issued or issuable upon a stock split or subdivision of Common Stock, conversion of, or as a dividend or distribution on, the Series Preferred; (2) shares of Common Stock and/or options, warrants or other Convertible Securities and the Common Stock issued pursuant to such options, warrants or other Convertible Securities issued after the Filing Date to employees, officers or directors of, or consultants or advisors to, the Company pursuant to stock purchase or stock option plans or other arrangements that are unanimously approved by the Board; (3) shares of Common Stock and/or Convertible Securities issued pursuant to the exercise of debentures, options, warrants or other Convertible Securities outstanding as of the Filing Date; (4) shares of Common Stock or Convertible Securities issued for consideration other than cash pursuant to a merger, consolidation, strategic alliance, acquisition or similar business combination unanimously approved by the Board and the securities issued pursuant to any such Convertible Securities; (5) shares of Common Stock or Convertible Securities issued in connection with equipment lease financing arrangements, credit agreements, debt financings, or other commercial transactions unanimously approved by the Board, and the securities issued pursuant to any such Convertible Securities; (6) Convertible Securities issued pursuant to the exercise of warrants issued pursuant to that certain Series A and Junior Preferred and Warrant Purchase Agreement, by and among the Company and each of those persons and entities listed on the schedule of purchasers

10.

144073067 v7

Exhibit 2                                                                                        000016

A0797903

attached thereto, and the securities issued pursuant to any such Convertible Securities; and (7) shares of Common Stock or Convertible Securities issued in connection with strategic transactions, including any licensing, collaboration or joint venture arrangement, unanimously approved by the Board and the securities issued pursuant to any such Convertible Securities. The *"Effective Price"* of Additional Shares of Common Stock shall mean the quotient determined by dividing the total number of Additional Shares of Common Stock issued or sold, or deemed to have been issued or sold, by the Company under this Section 4(j), into the aggregate consideration received, or deemed to have been received, by the Company for such issuance or sale under this Section 4(j), for such Additional Shares of Common Stock.

**k. Certificate of Adjustment.** In each case of an adjustment or readjustment of any Series Preferred Conversion Price or a determination of any other property receivable upon conversion of the Series Preferred, the Company, at its expense, shall compute such adjustment or readjustment in accordance with the provisions hereof and prepare a certificate showing such adjustment or readjustment, and shall mail such certificate, by first class mail, postage prepaid, to each registered holder of the applicable Series Preferred at the holder's address as shown in the Company's books. The certificate shall set forth, as applicable, (i) such adjustment or readjustment, showing in reasonable detail the facts upon which such adjustment or readjustment is based, including a statement of (A) the consideration received or deemed to be received by the Company for any Additional Shares of Common Stock issued or sold or deemed to have been issued or sold, (B) the applicable Series Preferred Conversion Price in effect at the time, and (C) the number of Additional Shares of Common Stock or (ii) the type and amount, if any, of other property which at the time would be received upon conversion of the applicable Series Preferred.

**l. Notices of Record Date.** Upon (i) any taking by the Company of a record of the holders of any class of securities for the purpose of determining the holders thereof who are entitled to receive any dividend or other distribution or (ii) any Acquisition or other capital reorganization of the Company, any reclassification or recapitalization of the capital stock of the Company, any merger or consolidation of the Company with or into any other corporation, or any Asset Transfer, or any voluntary or involuntary dissolution, liquidation or winding up of the Company, the Company shall mail to each holder of Series Preferred at least 20 days (or such shorter period as may be approved by the holders of a majority of the outstanding Series Preferred, voting together as a single class on an as-if-converted to Common Stock basis) prior to the record date for any event specified in clause (i) above, or the effective date of any event specified in clause (ii) above, a notice specifying, as applicable, (1) the date on which any such record is to be taken for the purpose of such dividend or distribution and a description of such dividend or distribution, (2) the date on which any such Acquisition, capital reorganization, reclassification, recapitalization, merger, transfer, consolidation, Asset Transfer, dissolution, liquidation or winding up is expected to become effective, and (3) the date, if any, that is to be fixed as to when the holders of record of Common Stock (or other securities) shall be entitled to exchange their shares of Common Stock (or other securities) for securities or other property deliverable upon such Acquisition, capital reorganization, reclassification, recapitalization, merger, transfer, consolidation, Asset Transfer, dissolution, liquidation or winding up.

**m. Automatic Conversion.**

11.

144073067 v7

Exhibit 2 000017

A0797903

(i)      **For Series Preferred Upon Majority Election or Qualified IPO.** Each share of Series Preferred shall automatically be converted into shares of Common Stock, based on the then-effective applicable Series Preferred Conversion Price, (1) upon the vote or written consent of the holders of at least a majority of the outstanding Series Preferred, voting together as a single class on an as-if-converted to Common Stock basis, or (2) immediately prior to the closing of a firmly underwritten public offering pursuant to an effective registration statement under the Securities Act of 1933, as amended, covering the offer and sale of Common Stock for the account of the Company in which the proceeds to the Company (after deduction of underwriting commissions and expenses) are at least $40,000,000 (a "*Qualified IPO*").

(ii)     **Automatic Conversion Mechanics.** In the event of any automatic conversion pursuant to this Section 4(m), any certificates representing shares of the applicable Series Preferred outstanding as of the time of any such automatic conversion (the "*Automatic Conversion Time*") shall immediately after such Automatic Conversion Time represent a number of shares of Common Stock as provided in this Section 4(m), and all rights of the holder of such shares as a holder of the applicable Series Preferred shall immediately upon such Automatic Conversion Time cease and terminate with respect to the shares so converted (provided that any declared and unpaid dividends shall be paid in accordance with the provisions of Section 4(d)). Notwithstanding the foregoing, any holder of any Series Preferred so converted as of such Automatic Conversion Time may (but shall not be required to) after such Automatic Conversion Time surrender his, her or its stock certificate or certificates formerly representing Series Preferred to the Company, and upon such surrender the Company will issue a certificate for the correct number of shares of Common Stock to which such holder is entitled as provided in this Section 4(m).

n.      **Fractional Shares.** No fractional shares of Common Stock shall be issued upon conversion of Series Preferred. All shares of Common Stock (including fractions thereof) issuable upon conversion of more than one share of Series Preferred by a holder thereof shall be aggregated for purposes of determining whether the conversion would result in the issuance of any fractional share. If, after the aforementioned aggregation, the conversion would result in the issuance of any fractional share, the Company shall, in lieu of issuing any fractional share, pay cash equal to the product of such fraction multiplied by the Common Stock's fair market value (as determined by the Board) on the date of conversion.

o.      **Reservation of Stock Issuable Upon Conversion.** The Company shall at all times reserve and keep available out of its authorized but unissued shares of Common Stock, solely for the purpose of effecting the conversion of the shares of the Series Preferred, such number of its shares of Common Stock as shall from time to time be sufficient to effect the conversion of all outstanding shares of the Series Preferred. If at any time the number of authorized but unissued shares of Common Stock shall not be sufficient to effect the conversion of all then outstanding shares of the Series Preferred, the Company will take such corporate action as may, in the opinion of its counsel, be necessary to increase its authorized but unissued shares of Common Stock to such number of shares as shall be sufficient for such purpose.

p.      **Notices.** Any notice required by the provisions of this Section 4 shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to

12.

144073067 v7

Exhibit 2                                                                                                    000018

A0797903

be notified, (ii) five days after having been sent by registered or certified mail, return receipt requested, postage prepaid, (iii) one day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt or (iv) upon delivery by electronic transmission by the corporation (as defined in Section 20 of the California Corporations Code); provided that with respect to any notice given via electronic transmission by the corporation, the Company shall have first complied with the applicable provisions of Section 20 of the California Corporations Code and 15 U.S.C. Sec. 7001(c)(1). Subject to the foregoing, all notices (with the exception of notices posted on an electronic message board or network as contemplated by Section 20(a)(2) of the California Corporations Code) shall be addressed to each holder of record at the address of such holder appearing on the books of the Company.

q.      **Payment of Taxes.** The Company will pay all taxes (other than taxes based upon income) and other governmental charges that may be imposed with respect to the issue or delivery of shares of Common Stock upon conversion of shares of Series Preferred, excluding any tax or other charge imposed in connection with any transfer involved in the issue and delivery of shares of Common Stock in a name other than that in which the shares of Series Preferred so converted were registered.

r.      **No Dilution or Impairment.** Without the consent of the holders of the then outstanding Series A Preferred, as required under Section 2(b), and the holders of a majority of the then outstanding Junior Preferred, to the extent required under Section 2(c), the Company shall not amend its Articles of Incorporation or participate in any reorganization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or take any other voluntary action, for the purpose of avoiding or seeking to avoid the observance or performance of any of the terms to be observed or performed hereunder by the Company, but shall at all times in good faith assist in carrying out all such action as may be reasonably necessary or appropriate in order to protect the conversion rights of the holders of the Series Preferred against dilution or other impairment.

5.      **No Reissuance of Series Preferred.** No share or shares of Series Preferred acquired by the Company by reason of redemption, purchase, conversion or otherwise shall be reissued; and in addition, these Amended and Restated Articles of Incorporation shall be appropriately amended to effect the corresponding reduction in the Company's authorized stock.

6.      **No Redemption Rights.** The Series Preferred shall not be redeemable.

### III.

A.      The liability of the directors of the Company for monetary damages shall be eliminated to the fullest extent permissible under California law.

B.      The Company is authorized to provide indemnification of agents (as defined in Section 317 of the General Corporation Law of California) for breach of duty to the Company and its shareholders through bylaw provisions or through agreements with agents, shareholder resolutions or otherwise, in excess of the indemnification otherwise permitted by Section 317 of the General Corporation Law of California, subject to the limits on such excess indemnification set forth in Section 204 of the General Corporation Law of California. If, after the Filing Date,

13.

144073067 v7

Exhibit 2                                                                                                000019

A0797903

California law is amended in a manner which permits a corporation to limit the monetary or other liability of its directors or to authorize indemnification of, or advancement of such defense expenses to, its directors or to authorize indemnification of, or advancement of such defense expenses to, its directors or other persons, in any such case to a greater extent than is permitted on such effective date, the references in this Article to the "General Corporation Law of California" or "California law" shall to that extent be deemed to refer to California law as so amended.

C.    Any repeal or modification of this Article shall only be prospective and shall not effect the rights under this Article in effect at the time of the alleged occurrence of any action or omission to act giving rise to liability.

D.    The Company renounces, to the fullest extent permitted by law, any interest or expectancy of the Company in, or in being offered an opportunity to participate in, any Excluded Opportunity. An *"Excluded Opportunity"* is any matter, transaction or interest that is presented to, or acquired, created or developed by, or which otherwise comes into the possession of, (i) any director of the Company who is not an employee of the Company or any of its subsidiaries, or (ii) any holder of Series Preferred or any partner, member, director, stockholder, employee or agent of any such holder, other than someone who is an employee of the Company or any of its subsidiaries (collectively, *"Covered Persons"*), unless such matter, transaction or interest is presented to, or acquired, created or developed by, or otherwise comes into the possession of, a Covered Person expressly and solely in such Covered Person's capacity as a director of the Company.

FOUR: The foregoing amendment and restatement of the Articles of Incorporation of this corporation has been duly approved in accordance with Section 1400 of the General Corporation Law of California pursuant to the corporation's plan of reorganization pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. confirmed by the United States Bankruptcy Court for the Southern District of California (the *"Bankruptcy Court"*) by order entered on May 12, 2017 and entered on the Bankruptcy Court's docket at Docket No. 748 in Case No. 16-095968.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

14.

144073067 v7

Exhibit 2                                                                000020

# A0797903

The undersigned, Thomas Watlington, the President and Secretary of Sotera Wireless, Inc., declares under penalty of perjury under the laws of the State of California that the matters set out in the foregoing certificate are true of his own knowledge.

Executed at San Diego, California on May **15**, 2017.

Thomas Watlington, President and Secretary

Exhibit 2                                           000021



I hereby certify that the foregoing
transcript of_____15_____ page(s)
is a full, true and correct copy of the
original record in the custody of the
California Secretary of State's office.

MAY 1 7 2017

Date:_____

ALEX PADILLA, Secretary of State

Exhibit 2                                              000022

## AMENDED AND RESTATED BYLAWS
### OF
### SOTERA WIRELESS, INC.,
### a California corporation

## ARTICLE I

## SHAREHOLDERS' MEETINGS

**Section 1.** **Place of Meetings**. All meetings of the shareholders shall be held at the office of the corporation, or at such other place within or without the State of California, as may be designated for that purpose from time to time by the Board of Directors.

**Section 2.** **Annual Meetings.** The annual meeting of the shareholders shall be held, each year, at the time and on the day as follows:

Time of Meeting: 10:00 a.m.

Date of Meeting: March 1

If this day shall be a legal holiday, or the Board of Directors shall otherwise elect not to hold the annual meeting on such date, then the annual meeting shall be held on the date and at the time determined by the Board and set forth in Notice of the Meeting given to shareholders in accordance with Section 4 of this Article, provided such date shall be not later than sixty (60) days after the date designated above. At the annual meeting, the shareholders shall elect a Board of Directors, consider reports of the affairs of the corporation and transact such other business as may properly be brought before the meeting.

**Section 3.** **Special Meetings.** Special meetings of the shareholders for any purpose or purposes may be called at any time by the Board of Directors, the chairman of the Board, if any, the president, the secretary, or an assistant secretary or by shareholders holding not less than ten percent (10%) of the votes at the meeting. Upon request in writing to the chairman of the Board, if any, the president, vice-president, or secretary, or by any person (other than the Board) entitled to call a special meeting of shareholders, the officer forthwith shall cause notice to be given to the shareholders entitled to vote that a meeting will be held at a time requested by the person or persons calling the meeting, not less than thirty-five (35) nor more than sixty (60) days after receipt of the request.

**Section 4.** **Notice of Meetings.** Whenever, shareholders are required or permitted to take any action at a meeting, a written notice of the meeting shall be given not less than ten (10) (or, if sent by third class mail, thirty (30)) nor more than sixty (60) days before the date of the meeting to each shareholder entitled to vote thereat. Such notice shall state the place; date and hour of the meeting and (1) in the case of a special meeting, the general nature of the business to be transacted, and no other business may be transacted, or (2) in the case of the annual meeting, those matters which the Board, at the time of the mailing of the notice, intends to present for action by the shareholders, but, subject to the provisions of California Corporations Code Section 601(f), any proper matter may be presented at the meeting for such action. The notice of any

1.

Exhibit 2

000023

Exhibit 2

meeting at which directors are to be elected shall include the names of nominees intended at the time of the notice to be presented by Management for election.

Notice of a shareholders' meeting or any report shall be given either personally, by electronic transmission, or by first-class mail, or, in the case of a corporation with outstanding shares held of record by 500 or more persons (determined as provided in Section 605) on the record date for the shareholders' meeting; notice may be sent third class mail, or other means of written communication, addressed to the shareholder at the address of such shareholder appearing on the books of the corporation or given by the shareholder to the corporation for the purpose of notice; or if no such address appears or is-given, at the place where the principal executive office of the corporation is located or by publication at least once in a newspaper of general circulation in the county in which the principal executive office is located. The notice or report shall be deemed to have been given at the time when delivered personally, sent by electronic transmission by the corporation, deposited in the mail or sent by other means of written communication. An affidavit of mailing of any notice or report in accordance with California Corporations Code Section 113, executed by the secretary, assistant secretary or any transfer agent, shall be prima facie evidence of the giving of the notice or report.

If any notice or report addressed to the shareholder at the address of such shareholder appearing on the books of the corporation is returned to the corporation by the United States Postal Service marked to indicate that the United States Postal Service is unable to deliver the notice or report to the shareholder at such address, all future notices or reports shall be deemed to have been duly given without further mailing if the same shall be available for the shareholder upon written demand of the shareholder at the principal executive office of the corporation for a period of one (1) year from the date of the giving of the notice or report to all other shareholders.

When a shareholders' meeting is adjourned to another time or place, except as, provided in this Section 4, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting the corporation may transact any business which might have been transacted at the original meeting. If the adjournment is for more than forty-five (45) days or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each shareholder of record entitled to vote at the meeting.

**Section 5.    Consent to Shareholders' Meetings**.  The transactions of any meeting of shareholders, however called and noticed, and wherever held, are as valid as though had at a meeting duly held after regular call and notice, if a quorum is present either in person or by proxy, and if, either before or after the meeting, each of the persons entitled to vote, not present in person or by proxy, signs a written waiver of notice or a consent to the holding of the meeting or an approval of the minutes thereof. All such waivers, consents and approvals shall be filed with the corporate records or made a part of the minutes of the meeting. Attendance of a person at a meeting shall constitute a waiver of notice of and presence at such meeting, except when the person objects, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened and except that attendance at a meeting is not a waiver of any right to object to the consideration of matters not included in the notice if such objection is expressly made at the meeting. Neither the business to be transacted at nor the purpose of any regular or special meeting of shareholders need be specified in any written waiver

2.

Exhibit 2                                                                                                                      000024

of notice, consent to the holding of the meeting or approval of the minutes thereof, except as provided in California Corporations Code Section 601(f).

Section 6.    **Shareholders Acting Without a Meeting**. Unless otherwise, provided in the articles, any action which may be taken at any annual or special meeting of shareholders may be taken without a Meeting and without prior notice, if a consent in writing, setting forth .the action. so taken, shall be signed by the holders of outstanding shares having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted. Unless the consents of all shareholders entitled to vote have been solicited in writing, (1) notice of any shareholder approval pursuant to California Corporations Code Section 310, 317, 1201 or 2007 without a meeting by less than unanimous written consent shall be given at least ten .days before the consummation of the action authorized by such approval, and (2) prompt notice shall be given of the taking of any other corporate action approved by shareholders without a meeting by less than unanimous written consent, to those shareholders entitled to vote who have not consented in writing. Any notice required to be given pursuant to this Section 6 shall be given in accordance with California Corporations Code Section 601(b).

Section 7.    **Quorum**.  Unless otherwise provided in the articles, the holders of a majority of the shares entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of the shareholders.

If a quorum is present, the affirmative vote of the majority of the shares represented and voting at a duly held meeting at which a quorum is present (which shares voting affirmatively also constitute at least a majority of the required quorum) shall be the act of the shareholders, unless the vote of a greater number or voting by classes is required by the California Corporations Code or as provided in this Section 7.

The shareholders present at a duly called or held meeting at which a quorum is present may continue to transact business until adjournment notwithstanding the withdrawal of enough shareholders to leave less than a quorum, if any action taken (other than adjournment) is approved by at least a majority of the shares required to constitute a quorum.

In the absence of a quorum, any meeting of shareholders may be adjourned from time to time by the vote of a majority of the shares represented either in person or by proxy, but no other business may be transacted, except as provided in this Section 7.

Section 8.    **Voting Rights; Cumulative Voting**.  Every shareholder complying with this Section 8 and entitled to vote at any election of directors may cumulate such shareholder's votes and give one candidate a number of votes equal to the number of directors to be elected multiplied by the number of votes to which the shareholder's shares are normally entitled, or distribute the shareholder's votes on the same principle among as many candidates as the shareholder thinks fit.

No shareholder shall be entitled to cumulate votes (i.e., cast for any candidate a number of votes greater than the number of votes which such shareholder normally is entitled, to cast) unless such candidate or candidates' names have been placed in nomination prior to the voting

3.

Exhibit 2

and the shareholder has given notice at the meeting prior to the voting of the shareholder's intention to cumulate the shareholder's votes. If anyone shareholder has given such notice, all shareholders may cumulate their votes for candidates in nomination.

In any election of directors, the candidates receiving the highest number of votes of the shares entitled to be voted for them up to the number of directors to be elected by such shares are elected.

**Section 9.     Proxies**.  Every person entitled to vote shares may authorize another person or persons to act by proxy with respect to such shares. Any proxy purporting to be executed in accordance with the provisions of the California Corporations Code shall be presumptively valid.

No proxy shall be valid after the expiration of eleven (11) months from the date thereof unless otherwise provided in the proxy. Every proxy continues in full force and effect until revoked by the person executing it prior to the vote pursuant thereto, except as otherwise provided in this Section 9. Such revocation may be effected by a writing delivered to the corporation stating that the proxy is revoked or by a subsequent proxy executed by the person executing the prior proxy and presented to the meeting, or as to any meeting, by attendance at such meeting and voting in person by, the person executing the proxy. The dates contained on the forms of proxy presumptively determine the order of execution, regardless of the postmark dates on the envelopes in which they are mailed.

Any form of proxy or written consent distributed to ten (10) or more shareholders at any such time as this corporation has outstanding shares held of record by 100 or more persons shall afford an opportunity on the proxy or form of written consent to specify a choice between approval and disapproval of each matter or group of related matters, intended to be acted upon at the meeting for which the proxy is solicited or by such written consent, other than elections to office, and shall provide, subject to reasonable specified conditions, that where the person solicited specifies a choice with respect to any such matter the shares will be voted in accordance therewith.

Every form of proxy or written consent, which provides an opportunity to specify approval or disapproval with respect to any proposal, shall also contain an appropriate space marked "abstain," whereby a shareholder may indicate a desire to abstain from voting his or her shares on the proposal. A proxy marked "abstain" by the shareholder with respect to a particular proposal shall not be voted either for or against such proposal. This corporation shall make use of proxies in accordance with California Corporations Code Sections 604 and 705.

**Section 10.     Record Date of Ownership of Shares**.  In order that the corporation may determine the shareholders entitled to notice of any meeting or to vote or entitled to receive payment of any dividend or other distribution or allotment of any rights or entitled to exercise any rights with respect to any other lawful action, the Board may fix, in advance, a record date, which shall not be more than sixty (60) nor less than ten (10) days prior to the date of such meeting nor more than sixty (60) days prior to any other action.

If no record date is fixed:

4.

Exhibit 2                                                                    000026

Exhibit 2

   **(1)** The record date for determining shareholders entitled to notice of or to vote at a meeting of shareholders shall be at the close of business on the business day next preceding the day on which notice is given or, if notice is waived, at the close of business on the business day next preceding the day on which the meeting is held.

   **(2)** The record date for determining shareholders entitled to give consent to corporate action in writing without a meeting when no prior action by the Board is necessary, shall be the day on which the first written consent is given.

   **(3)** The record date for determining shareholders for any other purpose shall be at the close of business on the day on which the Board adopts the resolution relating thereto, or the 60th day prior to the date of such other action, whichever is later.

A determination of shareholders of record entitled to notice of or to vote at a meeting of shareholders shall apply to any adjournment of the meeting unless the Board fixes a new record date for the adjourned meeting, but the Board shall fix a new record date if the meeting is adjourned for more than forty-five (45) days from the date set for the original meeting.

Shareholders at the close of business on the record date are entitled to notice and to vote or to receive the dividend, distribution or allotment of rights or to exercise the rights, as the case may be, notwithstanding any transfer of any shares on the books of the corporation after the record date, except as otherwise provided in the articles or by agreement or in the California Corporations Code.

  **Section 11.** **Organization**.  The president shall call the meeting of the shareholders to order and shall act as chairman of the meeting. In the event of the absence or disability of the president, the shareholders shall appoint a chairman for such meeting.  The secretary of the company shall act as secretary of all meetings of the shareholders, but in the absence of the secretary at any meeting of the shareholders, the presiding officer may appoint any person to act as secretary of the meeting.

  **Section 12.** **Inspectors of Election**.  In advance of any meeting of shareholders the Board may appoint inspectors of election to act at the meeting and any adjournment thereof. If inspectors of election are not so appointed, or if any persons so appointed fail to appear or refuse to act, the chairman of any meeting of shareholders may, and on the request of any shareholder or a shareholder's proxy shall, appoint inspectors of election (or persons to replace those who so fail or refuse) at the meeting. The number of inspectors shall be either one (1) or three (3). If appointed at a meeting on the request of one (1) or more shareholders or proxies, the majority of shares represented in person or by proxy shall determine whether one (1) or three (3) inspectors are to be appointed.

The inspectors of election shall determine the number of shares outstanding and the voting power of each, the shares represented at the meeting, the existence of a quorum and the authenticity, validity and effect of proxies, receive votes, ballots or consents, hear and determine all challenges and questions in any way arising in connection with the right to vote, count and tabulate all votes or consents, determine when the polls shall close, determine the result and do such acts as may be proper to conduct the election or vote with fairness to all shareholders.

The inspectors of election shall perform their duties impartially, in good faith, to the best of their ability and as expeditiously as is practical. If there are three (3) inspectors of election, the decision, act or certificate of a majority is effective in all respects as the decision, act or certificate of all. Any report or certificate made by the inspectors of election is prima facie evidence of the facts stated therein.

## ARTICLE II

## DIRECTORS; MANAGEMENT

**Section 1.    Powers**.  Subject to the limitation of the Articles of Incorporation, of these Bylaws, and of the California Corporations Code relating to action required to be approved by the shareholders (California Corporations Code Section 153), or by the outstanding shares (California Corporations Code Section 152), the business and affairs of the corporation shall be managed and all corporate powers shall be exercised by or under the direction of the Board. The Board may delegate the management of the day-to-day operation of the business of the corporation to a management company or other person provided that the business and affairs of the corporation shall be managed and all corporate powers shall be exercised under the ultimate direction of the Board.

**Section 2.    Number and Qualification**.  The authorized number of directors of the corporation shall be not less than a minimum of four (4) nor more than a maximum of seven (7) (which maximum number in no case shall be greater than two times said minimum, minus one). The exact number of directors shall be set within these limits from time to time (a) by approval of the Board of Directors, or (b) by the affirmative vote of a majority of the shares represented and voting at a duly held meeting at which a quorum is present (which shares voting affirmatively also constitute at least a majority of the required quorum) or by the written consent of shareholders pursuant to Section 6 hereinabove.

Any amendment of these bylaws changing the maximum or minimum number of directors may be adopted only by the affirmative vote of a majority of the outstanding shares entitled to vote; provided, an amendment reducing the minimum number of directors to less than five (5), cannot be adopted if votes cast against its adoption at a meeting or the shares not consenting to it in the case of action by written consent are equal to more than 16 2/3 percent of the outstanding shares entitled to vote.

**Section 3.    Election and Tenure of Office**.  At each annual meeting of shareholders, directors shall be elected to hold office until the next annual meeting.

Each director, including a director elected to fill a vacancy, shall hold office until the expiration of the term for which elected and until a successor has been elected and qualified.

**Section 4.    Vacancies**.  Unless otherwise provided in the articles, vacancies on the Board of Directors (including vacancies created by the removal of a director) may be filled by a majority of the directors then in office, whether or not less than a quorum, or by a sole remaining director.

6.

Exhibit 2                                                                                        000028

Any director may resign effective upon giving written notice to the chairman of the Board, if any, the president, the secretary, or the Board of Directors of the corporation, unless the notice specifies a later time for the effectiveness of such resignation. If the resignation is effective at a future time, a successor may be elected to take office when the resignation becomes effective.

No reduction of the authorized number of directors shall have the effect of removing any director prior to the expiration of such directors' term of office.

**Section 5.    Removal of Directors**.  The entire Board of Directors or any individual director may be removed from office as provided by California Corporations Code Sections 303 and 304.

**Section 6.    Place of Meetings**.  Meetings of the Board may be held at any place within or without the state which has been designated in the notice of the meeting or, if not stated in the notice or there is no notice, designated by resolution of the Board.

**Section 7.    Annual Organization Meetings**.  The annual organization meeting of the Board of Directors shall be a regular meeting and shall be held immediately following the adjournment of the annual meeting of the shareholders. Notice of this meeting shall not be required.

**Section 8.    Other Regular Meetings**.  Regular meetings of the Board of Directors shall be held from time to time at the corporate offices, or such other place as may be designated by the Board of Directors. No notice need be given of such regular meetings.

**Section 9.    Special Meetings - Notices**.  Unless otherwise provided in the articles, special meetings of the Board of Directors for any purpose or purposes may be called by the Chairman of the Board, if any, or the president or any vice president or the secretary or any two (2) directors.

Special meetings of the Board shall be held upon four (4) days' notice by mail or forty-eight (48) hours' notice delivered personally or by telephone including a voice messaging system or by electronic transmission by the corporation. Neither the articles nor these Bylaws may dispense with notice of a special meeting but a lack of notice will not invalidate actions taken at a special meeting so long as the provisions of Section 10 hereof are met. A notice, or waiver of notice, need not specify the purpose of any regular or special meeting of the Board.

**Section 10.    Waiver of Notice**.  Notice of a meeting need not be given to any director who signs a waiver of notice or a consent to holding the meeting or an approval of the minutes thereof, whether before or after the meeting, or who attends the meeting without protesting, prior thereto or at its commencement, the lack of notice to such director.

The transactions of any meeting of the Board, however called and noticed or wherever held, are as valid as though had at a meeting duly held after regular call and notice if a quorum is present and if, either before or after the meeting, each of the directors not present signs a written waiver of notice, a consent to holding the meeting or an approval of the minutes thereof. All such

waivers, consents and approvals shall be filed with the corporate records or made a part of the minutes of the meeting.

**Section 11.    Directors Acting Without a Meeting by Unanimous Written Consent**. Any action required or permitted to be taken by the Board may be taken without a meeting, if all members of the Board shall individually or collectively consent in writing to such action. Such written consent or consents shall be filed with the minutes of the proceedings of the Board. Such action by written consent shall have the same force and effect as a unanimous vote of such directors.

**Section 12.    Notice of Adjournment**. A majority of the directors present, whether or not a quorum is present, may adjourn any meeting to another time and place. If the meeting is adjourned for more than twenty-four (24) hours, notice of the adjournment to another time or place shall be given prior to the time of the adjourned meeting to the directors who were not present at the time of the adjournment.

**Section 13.    Quorum**. A majority of the authorized number of directors constitutes a quorum of the Board for the transaction of business.

Every act or decision done or made by a majority of the directors present at a meeting duly held at which a quorum is present is the act of the Board, subject to California Corporations Code Sections 310 and 317(e). A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the required quorum for such meeting.

The provisions of this Section 13 apply also to committees of the Board and incorporators and action by such committees and incorporators, *mutatis mutandis*.

**Section 14.    Use of Conference Telephone**. Members of the Board may participate in a meeting through use of conference telephone or similar communications equipment, so long as all members participating in such meeting can hear one another.

**Section 15.    Compensation of Directors**. Directors, as such, shall not receive any stated salary for their services, but by resolution of the Board a fixed sum and expense of attendance, if any, may be allowed for attendance at each annual, regular, and/or special meeting of the Board; *provided* that nothing herein contained shall be construed to preclude any director from serving the company in any other capacity and receiving compensation therefor.

**Section 16.    Executive Committee**. An executive committee may be appointed by resolution passed by a majority of the whole Board. The executive committee shall be composed of members of the Board, and shall have such powers as may be expressly delegated to it by resolution of the Board of Directors. It shall act only in the intervals between meetings of the Board and shall be subject at all times to the control of the Board of Directors.

8.

Exhibit 2                                                                                    000030

Exhibit 2

# ARTICLE III

## OFFICERS

**Section 1.**     **Officers**.  The officers of the corporation shall be a president, a secretary and a chief financial officer (treasurer). The corporation may also have, at the discretion of the Board of Directors, a chairman of the Board, one or more vice presidents, one or more assistant secretaries, one or more assistant treasurers, and such other officers as may be appointed in accordance with the provisions of Section 3 of this Article III. Any number of offices may be held by the same person.

**Section 2.**     **Election**.  The officers of the corporation, except such officers as may be appointed in accordance with the provisions of Section 3 or Section 5 of this Article III, shall be chosen annually by the Board of Directors, and each shall hold office until they shall resign or shall be removed or otherwise disqualified to serve, or their successors shall be elected and qualified.

**Section 3.**     **Subordinate Officers**.  The Board of Directors may appoint such other officers as the business of the corporation may require, each of whom shall hold office for such period, have such authority and perform such duties as are provided in these Bylaws or as the Board of Directors may from time to time determine.

**Section 4.**     **Removal and Resignation**.  Any officer may be removed, either with or without cause, by a majority of the directors at the time in office, at any regular or special meeting of the Board; or, except in case of an officer chosen by the Board of Directors, by any officer upon whom such power of removal may be conferred by the Board of Directors.

Any officer may resign at any time by giving written notice to the corporation. Any such resignation shall take effect at the date of the receipt of such notice or at any later time specified therein; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

**Section 5.**     **Vacancies**.   A vacancy in any office because of death, resignation, removal, disqualification or any other cause shall be filled in the manner prescribed in these Bylaws for regular appointments to such office.

**Section 6.**     **Chairman of the Board**.  The Chairman of the Board, if there shall be such an officer, shall, if present, preside at all meetings of the Board of Directors, and exercise and perform such other powers and duties as may be from time to time assigned to such officer by the Board of Directors or prescribed by these Bylaws.

**Section 7.**     **President**.  Subject to such supervisory powers, if any, as may be given by the Board of Directors to the Chairman of the Board, if there be such an officer, the president shall be the chief executive officer of the corporation, shall be subject to the control of the Board of Directors, and shall have general supervision, direction and control of the business and officers of the corporation. The president shall preside at all meetings of the Board of Directors. The president shall be ex officio a member of all the standing committees, including the executive committee, if any, and shall have the general powers and duties of management

9.

Exhibit 2                                                                                           000031

Exhibit 2

usually vested in the office of president of a corporation, and shall have such other powers and duties as may be prescribed by the Board of Directors or these Bylaws.

**Section 8.    Vice-Presidents**.  In the event the Board shall elect one or more vice presidents, in the absence or in the event of the disability of the president, the vice presidents, in order of their rank as fixed by the Board of Directors, or if not ranked, the vice president designated by the Board of Directors, shall perform all the duties of the president, and when so acting shall have all the powers of, and be subject to all the restrictions upon the president. The vice presidents shall have such other powers and perform such other duties as from time to time may be prescribed for them respectively by the Board of Directors or these Bylaws.

**Section 9.    Secretary**.  The secretary shall keep, or cause to be kept, a book of minutes at the principal office or such other place as the Board of Directors may order, of all meetings of directors and shareholders, with the time and place of holding, whether regular or special, and if special, how authorized, the notice thereof given, the names of those present at directors' meetings, the number of shares present or represented at shareholders' meetings and the proceedings thereof.

The secretary shall keep, or cause to be kept, at the principal office or at the office of the corporation's transfer agent, a share register, or duplicate share register, showing the names of the shareholders and their addresses; the number and classes of shares held by each; the number and date of certificates issued for the same; and the number and date of cancellation of every certificate surrendered for cancellation.

The secretary shall give, or cause to be given, notice of all the meetings of the shareholders and of the Board of Directors required by the Bylaws or by law to be given, and shall keep the seal of the corporation in safe custody, and shall have such other powers and perform such other duties as may be prescribed by the Board of Directors or by these Bylaws.

**Section 10.    Chief Financial Officer**.  The chief financial officer shall keep and maintain, or cause to be kept and maintained, adequate and correct accounts of the properties and business transactions of the corporation, including accounts of its assets, liabilities, receipts, disbursements, gains, losses, capital, surplus and shares. Any surplus, including earned surplus, paid-in surplus and surplus arising from a reduction of stated capital, shall be classified according to source and shown in a separate account. The books of account shall at all reasonable times be open to inspection by a director.

The chief financial officer shall deposit all moneys and other valuables in the name and to the credit of the corporation with such depositaries as may be designated by the Board of Directors, shall disburse the funds of the corporation as may be ordered by the Board of Directors, shall render to the president and directors, whenever they request it, an account of all transactions performed as chief financial officer and of the financial condition of the corporation, and shall have such other powers and perform such other duties as may be prescribed by the Board of Directors or these Bylaws.

### ARTICLE IV

10.

Exhibit 2                    000032

## INDEMNIFICATION OF DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS LIABILITY OF DIRECTORS

The corporation shall, to the maximum extent permitted by the California Corporations Code, indemnify each of its agents against expenses, judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any proceeding arising by reason of the fact any such person is or, was an agent of the corporation. For purposes of this Article IV, an "agent" of the corporation includes any person who is or was a director, officer, employee or other agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, or was a director, officer, employee or agent of a corporation which was a predecessor corporation of the corporation or of another enterprise at the request of such predecessor corporation. The liability of the directors the corporation for monetary damages shall be eliminated to the fullest extent permitted under California law.

## ARTICLE V

## CORPORATE RECORDS AND REPORTS -- INSPECTION

**Section 1.      Records**.  The corporation shall keep adequate and correct books and records of account and shall keep minutes of the proceedings of its shareholders, Board and committees of the Board and shall keep at its principal executive office, or at the office of its transfer agent or registrar, a record of its shareholders, giving the names and addresses of all shareholders and the number and class of shares held by each. Such minutes shall be kept in written form. Such other books and records shall be kept either in written form or in any other form capable of being converted into written form.

**Section 2.      Waiver of California Corporations Code Section 1501**.  The requirement that the Board cause an annual report to be sent to the shareholders not later than one hundred twenty (120) days after the close of the fiscal year is hereby expressly waived so long as this corporation has less than one hundred (100) holders of record of its shares; *provided, however*, nothing contained herein shall be interpreted as prohibiting the Board of Directors from issuing annual or other periodic reports to the shareholders of the corporation as it deems appropriate.

**Section 3.      Inspection of Bylaws, Lists, Books, Records**.  The shareholders and other persons described in California Corporations Code Sections 213, 1600, and 1601 shall and do have the rights accorded them in said Sections regarding these Bylaws, as the same may be amended from time to time, a record and list of the shareholders' names and addresses and shareholdings, and the accounting books, records, and minutes of proceedings of the shareholders, the Board, and committees of the Board. The directors and other persons described in California Corporations Code Section 1602 shall and do have the rights accorded them in said Section regarding all books, records, and documents of every kind and regarding inspection of the physical properties of the corporation as well as any subsidiary corporations, domestic or foreign.

11.

Exhibit 2                                                                                          000033

**Section 4.    Checks, Drafts, Indebtedness**.  All checks, drafts or other orders for payment of money, notes or other evidences of indebtedness, issued in the name of or payable to the corporation, shall be signed or endorsed by such person, or persons and in such manner as shall be determined from time to time by resolution of the Board of Directors.

**Section 5.    Contracts, Other Instruments -- How Executed**.  The Board of Directors, except as in these Bylaws otherwise provided, may authorize any officer or officers, or agent or agents, to enter into any contract or execute any instrument in the name of and on behalf of the corporation. Such authority may be general or confined to specific instances. Unless so authorized by the Board of Directors, no officer, agent or employee shall have any power or authority to bind the corporation by any contract or engagement, or to pledge its credit or to render it liable for any purpose or for any amount.

**Section 6.    Annual Statement**.  This corporation shall, within ninety (90) days after the filing of its original Articles of Incorporation and annually thereafter during the applicable filing period (as defined in California Corporations Code Section 1502(c)) in each year, file, on a form prescribed by the California Secretary of State, a statement containing: (1) the presently authorized number of its directors; (2) the names and complete business or residence addresses of its incumbent directors; (3) the names and complete business or residence addresses of its chief executive officer, secretary and chief financial officer; (4) the street address of its principal executive office; (5) if the address of its principal executive office is not in this state; the street address of its principal business office in this state, if any; and (6) a statement of the general type of business which constitutes the principal business activity of the corporation.

The statement shall also designate, as the agent of such corporation for the purpose of service of process, a natural person residing in this state or corporation which has complied with California Corporations Code Section 1505 and whose Capacity to act as such agent has not terminated. If a natural person is designated, the statement shall set forth such person's complete business or residence address. If a corporate agent is designated, no address for it shall be set forth.

**Section 7.    Legend Condition**. In the event any shares of this corporation are issued pursuant to a consent, permit or exemption therefrom requiring the imposition of a legend condition, the person or persons issuing or transferring said shares shall cause said legend to appear "on the certificate" (as defined in California Corporations Code Section 174) and on the stub relating thereto in the stock record book and shall not be required to transfer any shares unless an exemption regarding such transfer exists or until an amendment to such consent or permit, or a new consent or permit, be first issued authorizing such transfer. To the extent applicable, the statements set forth in California Corporations Code Section 418(a) shall also appear "on the certificate" (as defined in California Corporations Code Section 174) and on the stub relating thereto.

**Section 8.    Representation of Shares of Other Corporations**. The chairman of the board, if any, the President, or any vice-president, or any other person authorized by resolution of the Board of Directors by any of the foregoing designated officers, is authorized to vote on, behalf of the corporation any and all shares of any other corporation or corporations, foreign or domestic, standing in the name of this corporation. The authority herein granted to said officers

12.

Exhibit 2                                                                                    000034

Exhibit 2

to vote or represent on behalf of this corporation, any and all shares held by this corporation in any other corporation or corporations may be exercised by any such officer in person or by any person authorized to do so by proxy duly executed by said officer.

## ARTICLE VI

## CORPORATE SEAL

The corporate seal shall be circular in form, and shall have inscribed thereon the name of the corporation, the date of its incorporation, and the word "California".

## ARTICLE VII

## AMENDMENTS TO BYLAWS

**Section 1.     By Shareholders**.  New Bylaws may be adopted or these Bylaws may be repealed or amended by approval of the outstanding shares (California Corporations Code Section 152).

**Section 2.     Powers of Directors**.  Subject to the right of the shareholders to adopt, amend or repeal Bylaws, as provided in Section 1 of this Article VIII, the Board of Directors may adopt; amend or repeal any of these Bylaws other than a Bylaw or amendment thereof changing the authorized number of directors as provided in California Corporations Code Section 212(a).

**Section 3.     Record of Amendments**.  Whenever an amendment or new Bylaw is adopted, it shall he copied in the book of Bylaws with the original Bylaws, in the appropriate place. If any Bylaw is repealed, the fact of repeal with the date of the meeting at which the repeal was enacted or written assent was filed shall be stated in said book.

## ARTICLE VIII

## AMENDMENTS TO ARTICLES OF INCORPORATION

The Articles of Incorporation of this corporation may be amended only in accordance with chapter 9, Division 1 of Title 1 of the California Corporations Code commencing with Section 900.

## ARTICLE IX

## RIGHT OF FIRST REFUSAL

**Section 1.     Right of First Refusal.**  No shareholder shall sell, assign, pledge, or in any manner transfer any of the shares of capital stock of the corporation or any right or interest therein, whether voluntarily or by operation of law, or by gift or otherwise, except by a transfer which meets the requirements hereinafter set forth in this bylaw:

13.

Exhibit 2                                                    000035

Exhibit 2

(a)     If the shareholder desires to sell or otherwise transfer any of his shares of stock subject to the right of first refusal as provided above, then the shareholder shall first give written notice thereof to the corporation.  The notice shall name the proposed transferee and state the number of shares to be transferred, the proposed consideration, and all other terms and conditions of the proposed transfer.

(b)     For thirty (30) days following receipt of such notice, the corporation shall have the option to purchase all or a portion of the shares specified in the notice at the price and upon the terms set forth in such notice.  In the event of a gift, property settlement or other transfer in which the proposed transferee is not paying the full price for the shares, and that is not otherwise exempted from the provisions of this Section 1, the price shall be deemed to be the fair market value of the stock at such time as determined in good faith by the Board of Directors.  In the event the corporation elects to purchase all of the shares or a portion of the shares, it shall give written notice to the transferring shareholder of its election and settlement for said shares shall be made as provided below in paragraph (d).

(c)     The corporation may assign its rights hereunder.

(d)     In the event the corporation and/or its assignee(s) elect to acquire any of the shares of the transferring shareholder as specified in said transferring shareholder's notice, the Secretary of the corporation shall so notify the transferring shareholder and settlement thereof shall be made in cash within thirty (30) days after the Secretary of the corporation receives said transferring shareholder's notice; provided that if the terms of payment set forth in said transferring shareholder's notice were other than cash against delivery, the corporation and/or its assignee(s) shall pay for said shares on the same terms and conditions set forth in said transferring shareholder's notice.

(e)     In the event the corporation and/or its assignees(s) do not elect to acquire all of the shares specified in the transferring shareholder's notice, said transferring shareholder may, within the sixty-day period following the expiration of the option rights granted to the corporation and/or its assignees(s) herein, transfer the shares specified in said transferring shareholder's notice which were not acquired by the corporation and/or its assignees(s) as specified in said transferring shareholder's notice.  All shares so sold by said transferring shareholder shall continue to be subject to the provisions of this bylaw in the same manner as before said transfer.

(f)     Anything to the contrary contained herein notwithstanding, the following transactions shall be exempt from the provisions of this bylaw:

(1)     A shareholder's transfer of any or all shares held either during such shareholder's lifetime or on death by will or intestacy to such shareholder's immediate family or to any custodian or trustee for the account of such shareholder or such shareholder's immediate family or to any limited partnership of which the shareholder, members of such shareholder's immediate family or any trust for the account of such shareholder or such shareholder's immediate family will be the general or limited partner(s) of such partnership. "Immediate family" as used herein shall mean spouse, lineal descendant, father, mother, brother, or sister of the shareholder making such transfer.

14.

Exhibit 2                                                                                                          000036

(2)     A shareholder's bona fide pledge or mortgage of any shares with a commercial lending institution, provided that any subsequent transfer of said shares by said institution shall be conducted in the manner set forth in this bylaw.

(3)     A shareholder's transfer of any or all of such shareholder's shares to the corporation or to any other shareholder of the corporation.

(4)     A shareholder's transfer of any or all of such shareholder's shares to a person who, at the time of such transfer, is an officer or director of the corporation.

(5)     A corporate shareholder's transfer of any or all of its shares pursuant to and in accordance with the terms of any merger, consolidation, reclassification of shares or capital reorganization of the corporate shareholder, or pursuant to a sale of all or substantially all of the stock or assets of a corporate shareholder.

(6)     A corporate shareholder's transfer of any or all of its shares to any or all of its shareholders.

(7)     A transfer by a shareholder which is a limited or general partnership, limited liability company or corporation to the partners, retired partners, members, retired members, shareholders and affiliates of such shareholder, and the estates and family members of any such partners, retired partners, members or retired members and any trusts for the benefit of any of the foregoing persons.

In any such case, the transferee, assignee, or other recipient shall receive and hold such stock subject to the provisions of this bylaw, and there shall be no further transfer of such stock except in accord with this bylaw.

(g)     The provisions of this bylaw may be waived with respect to any transfer either by the corporation, upon duly authorized action of its Board of Directors, or by the shareholders, upon the express written consent of the owners of a majority of the voting power of the corporation (excluding the votes represented by those shares to be transferred by the transferring shareholder).  This bylaw may be amended or repealed either by a duly authorized action of the Board of Directors or by the shareholders, upon the express written consent of the owners of a majority of the voting power of the corporation.

(h)     Any sale or transfer, or purported sale or transfer, of securities of the corporation shall be null and void unless the terms, conditions, and provisions of this bylaw are strictly observed and followed.

(i)     The foregoing right of first refusal shall terminate on upon the date securities of the corporation are first offered to the public pursuant to a registration statement filed with, and declared effective by, the United States Securities and Exchange Commission under the Securities Act of 1933, as amended.

(j)     The certificates representing shares of stock of the corporation shall bear on their face the following legend so long as the foregoing right of first refusal remains in effect:

15.

Exhibit 2                                                                                                    000037

Exhibit 2

**"THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO A RIGHT OF FIRST REFUSAL OPTION IN FAVOR OF THE CORPORATION AND/OR ITS ASSIGNEE(S), AS PROVIDED IN THE BYLAWS OF THE CORPORATION."**

16.

Exhibit 2                                                                          000038